

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-2008

# USA v. Howe

Precedential or Non-Precedential: Precedential

Docket No. 07-1404

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Howe" (2008). *2008 Decisions.* Paper 440.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/440

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1404

———

UNITED STATES OF AMERICA,

Appellant

v.

MALCOLM G. HOWE

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 04-cr-00085)
District Judge:  Honorable Gregory M. Sleet

———

Argued June 3, 2008
Before:  FISHER and JORDAN, *Circuit Judges*,
and YOHN,* *District Judge*.

———

*The  Honorable  William  H.  Yohn  Jr.,  United  States
District Judge for the Eastern District of Pennsylvania, sitting by
designation.

(Filed: September 18, 2008)

Christopher J. Burke (Argued)
David L. Hall
Office of United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899
        *Attorneys for Appellant*

Kathleen M. Jennings (Argued)
William J. Rhodunda, Jr.
Karen V. Sullivan
WolfBlock
1100 North Market, Suite 1001
Wilmington, DE  19801
        *Attorneys for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

In this appeal we review the sentence imposed on a defendant who was convicted of two counts of wire fraud.  The sentence consisted of two years' probation (including three months' home confinement), despite an advisory Sentencing Guidelines range of 18 to 24 months' imprisonment.  The District Court imposed no fine and no forfeiture (other than the

2

special assessment of $200).  The Government appeals from the District Court's judgment of sentence.  We will affirm.

## I.

### A.    The Offense

After retiring from the United States Air Force, where he served as a contracting officer, Malcolm G. Howe founded and operated Elite International Traders, Inc. (Elite).  Elite was in the business of supplying goods to the United States Armed Forces under written contract.  Typically, Elite acted as a "middle man," purchasing the contracted goods from a manufacturer and delivering them to the military customer.  Elite would then invoice the Defense Finance and Accounting Service (DFAS) for payment.

On September 27, 2000, Elite contracted with the Air Force to supply twenty embeddable computer encryption modules for $152,850.  These devices are used to encrypt national security information transmitted among networked military computers.  The devices in this case were destined for the United States Air Force Base at Ali Al Salem in Kuwait.  Under the terms of the contract, Howe was to obtain the devices and deliver them to Dover Air Force Base in Delaware for military transport to Ali Al Salem Air Force Base.

To obtain payment on the contract, Elite was required to submit to DFAS proof of delivery to Dover Air Force Base.  In fact, Howe (on behalf of Elite) never purchased or delivered the devices, but he still submitted or caused to be submitted to

3

DFAS an altered straight bill of lading[1] on January 22, 2001, falsely indicating that the devices had been delivered. Four days later, in reliance on the altered straight bill of lading, DFAS paid Elite $152,850.

When Ali Al Salem Air Force Base discovered that the devices had not arrived, the Air Force initiated an investigation to locate them. Howe then engaged in a sustained effort to obstruct the investigation in order to hide his crime. For example, in July 2002, Howe generated false invoices to create the impression that Elite had reimbursed a foreign company named Abdullah Trading for the purchase of the encryption modules. (Abdullah Trading ultimately paid $152,850 in restitution to the Department of Defense on Howe's behalf.) Howe backdated the invoices to January 10, 2001, conforming them to the date he falsely claimed to have delivered the contracted devices. The Air Force never found them and referred the case for law enforcement investigation. During the subsequent investigation, Howe continued to make several untruthful statements regarding the purported transaction.

On January 8, 2003, Howe's home and business were searched pursuant to a search warrant, and Howe consented to an interview with the investigating agents. Howe made further inconsistent and questionable statements during the interview. For example, Howe stated, for the first time in the two-year investigation, that the handwriting on the January 2001 altered

_____

[1]A straight bill of lading is a nonnegotiable bill of lading that specifies a consignee to whom the carrier is contractually obligated to deliver the goods.

4

bill of lading belonged to the owner of Abdullah Trading rather than himself.

### B.     The Trial

On August 24, 2004, the Government filed an indictment against Howe containing two counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343. Count I targeted the Elite invoice in the amount of $152,850 and the altered straight bill of lading, while Count II targeted an electronic funds transfer of $152,850 from a Massachusetts bank to a Delaware bank. Trial commenced on September 11, 2006. At trial, Howe stated again that he believed that the contract was being handled by Abdullah Trading. The jury found Howe guilty on both counts on September 14, 2006.

### C.     The Sentence

Counts I and II were grouped together for Guidelines calculations purposes under Guidelines § 3D1.2(d).[2] The base offense level was 6 under § 2F1.1(a). The amount of loss of $152,850 resulted in 7 levels added under § 2F1.1(b)(1)(H). Two more levels were added to reflect more than minimal planning under § 2F1.1(b)(2)(A), resulting in an adjusted offense level of 15. There were no Chapter Four enhancements, nor were there downward adjustments for acceptance of responsibility under Chapter Three of the Guidelines. At the December 12, 2006 sentencing hearing, the District Court

---

[2]The District Court used the 2000 edition of the Guidelines manual, and we will do the same.

5

therefore assigned Howe a Guidelines total offense level of 15 and a Criminal History Category of I. The corresponding advisory Guidelines range was 18 to 24 months' incarceration, along with a $4,000 to $40,000 fine under § 5E1.2(c)(3).

The Government recommended a sentence of 18 months, arguing that "Mr. Howe utilized his knowledge of the contracting process, utilized his knowledge of the fast pay system in particular, in order to take advantage of that system. He found a weakness and he exploited it. After doing that, he lied about it for years." The District Court, however, decided to vary downward from the bottom of the Guidelines to sentence Howe to two years' probation with three months' home confinement, to be served concurrently at each count. It also declined to impose any fine. The District Court provided the following justification for this sentence:

> "Mr. Howe, after having considered the provisions of the United States Sentencing Guidelines, the advisory Guideline range, the Supreme Court's ruling in *United States versus Booker*, the sentencing factors outlined in Title 18, Section 3553(a), and the underlying goals of sentencing, most of which have been mentioned by you and your counsel and [the] AUSA . . . , including punishment, deterrence, rehabilitation, respect for the law, I am sentencing you to probation. This sentence reflects the Court's view that, under the totality of the circumstances involved, a sentence of probation rather than a period of incarceration better serves the interests

6

of justice, as that term is applied to the societal interest in sentencing reflected in Section 3553(a) and various rulings of our Supreme Court and various courts of appeals.

The Court feels this sentence is appropriate for several reasons.

First, Mr. Howe, the Court recognizes that this is an isolated mistake, by all accounts, albeit an extraordinarily serious one. Mr. [AUSA] has not overreached at all in his description of the nature of the offense and the calculated nature of the offense, and the taking advantage of special knowledge that you possessed and to which you came to possess during the course of your service.

But by all accounts, you have led an honorable and lawful life until this point, as attested by the many, more than 40 character letters that I received and read.

You have no prior criminal history, nor any history of substance abuse of any kind, as best I can tell. You have served in the U.S. Military for 20 years and were honorably discharged with the rank of Master Sergeant.

Further, you are a well-regarded member of your community. This is further evidenced by the many letters, many, many letters from

7

non-relatives, people whom you served, high-ranking officers and others, members of the clergy, and just regular folks who wrote on your behalf.

You regularly attend church and participate in church activities.

The Court also understands that running your own business is difficult and can produce financial hardships. But this is in no way an excuse or to minimize, again, the seriousness of your acts. However, the Court believes you recognize the serious[] nature of the offense and are truly remorseful, as I think was well-evidenced by your statement, which I felt, quite frankly, was heartfelt today. This is also demonstrated by the fact that you immediately closed your business and seemed to be honestly committed to exploring new opportunities to provide for your family in a manner which, quite frankly, I think over the years has been quite extraordinary, quite extraordinary, your immediate family and your extended family, and those who were not blood relations.

It should be noted that you are a devoted husband, father, and son.

The Court recognizes that this process has been difficult for your family, and is encouraged

8

by the support that it saw in the letters and sees today out in the well of the court by virtue of the attendance of many individuals whom I think I assume rightly are connected with you in some way. The Court hopes you will remember this experience so if you are again faced with a decision of this sort, the one that brings you before me today, that you will in the future choose more wisely."

The Government then filed a timely notice of appeal from the sentence.

## II.

We have jurisdiction to review the District Court's judgment of sentence under 18 U.S.C. § 3742(b). *United States v. Kononchuk*, 485 F.3d 199, 203 & n.2 (3d Cir. 2007). We review the sentence imposed for reasonableness. The Government, as the appellant in this case, bears the burden of establishing that the sentence is unreasonable. *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006). In conducting our review, we must first ensure that the District Court committed no significant procedural error in arriving at its decision. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). "If we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range." *Id.* at 218.

## A.

We first examine the Government's argument that the District Court committed procedural error in sentencing Howe. We find no merit in this contention. The Supreme Court instructs us to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

Here, the Government does not argue that the District Court miscalculated or failed to calculate Howe's Guidelines range. Nor does the Government argue that the District Court treated the Guidelines as mandatory. Instead, the Government argues that the Court selected a sentence based on two clearly erroneous factual findings: first, that Howe committed a crime that was an "isolated mistake"; and second, that Howe was remorseful. "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wise*, 515 F.3d at 218 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). We are not left with such a definite and firm conviction in this case with respect to either of the two contested factual findings.

10

First, it was not clear error for the District Court to find that Howe made but an "isolated mistake" in perpetrating his crime. The Government argues that Howe's mistake could be characterized as isolated "only if it is possible for a two-year campaign to cover up a $152,850 fraud against the Air Force to be considered 'isolated.'" Yet, the District Court's words could just as easily be taken to mean that Howe's crime was isolated in the context of his entire life. Read this way, the District Court's finding is amply supported by the record. Indeed, Howe's dishonesty and obstruction stemmed entirely from his initial offense of using a false bill of lading as proof of delivery to exploit the contract payment process. In the context of Howe's entire life, this series of events reasonably could constitute an isolated mistake. Howe might be less blameworthy had he withdrawn from the fraud at an earlier point during the two-year period. But where there is no dispute that Howe "led an honorable and lawful life until this point," the District Court did not commit clear error in characterizing what he did as an isolated mistake. Any other result here would force district courts to choose their words so meticulously at sentencing hearings as to elevate form over substance.

Second, the Government argues that the District Court clearly erred in finding that Howe was remorseful. The Government bases this argument primarily on "[t]he fact that Howe went to trial. . . . At trial, Howe specifically denied the element of intent to defraud and sought, through counsel, to blame an uncharged third party . . . ." But this argument about Howe's defense at trial has nothing to do with what the District Court observed at the sentencing hearing.

11

In finding that Howe showed genuine remorse at sentencing, the District Court did not err at all, let alone clearly err.  Indeed, Howe stated in his allocution:

"It is with deep remorse that I say these words.

I sincerely apologize to the U.S. Government and the United States Air Force for the loss they sustained because of my actions associated with this case.

I would also like to publicly apologize to my family for the pain and agony they have endured throughout this ordeal.

I proudly say that I love this country.  This country has given me the opportunity to live a dream, a dream that allows me to provide quality of life for my family that I could not have afforded had I stayed in my home country of Trinidad.

I look back on the 20 years I spent in the Air Force as a special privilege, because I was able to serve this country by benefitting in so many other ways.  It was my intention to continue to serve this country while providing for my family, which is why I decided to go into the business of supplying commodities to all forces in the Middle East after my retirement from active duty.

I never intended to steal from the government or cause harm to the U.S. Air Force. I have strong regrets for allowing myself to be sucked into this fraudulent scheme for which I am now convicted.

The Court declared me guilty on the 14th of December [he meant September 2006]. I have been carrying the weight of guilt of selfish and incorrect acts since January of 2001, the knowledge of my involvement in this senseless crime or varied reactions from family and friends, shame, anger, disappointment, disbelief, surprise, sympathy, tears of pain and forgiveness.

Over the past few years I have done a lot of soul-searching. I have asked myself why am I in this predicament, after spending my entire life helping others and building a character of trustworthiness, integrity and love for all? The key reason I can find is that the Lord wanted to create a better person of me.

This has been a life-changing experience for me. But not just for me, but for my family and my friends. As a result of this experience, I have grown spiritually and developed an even closer relationship with my family. For this, I am extremely grateful.

I am now faced with making amends for my poor judgment. And though I am prepared to accept the Court's decision, Your Honor, I humbly ask that you afford me the opportunity to pay back the losses by assisting my community, thereby eliminating any further burden on my family.

Once again, I am deeply sorry for not doing the right thing when I had the opportunity to do so.

Thank you."

These words on the written page may or may not evoke a belief in their sincerity. The Government parses them in attempting to construct an image of lack of sincerity. It argues: "Howe's statement to the district court, far from being a sincere statement of contrition, is a classic example of a defendant dissembling. He did use the word 'remorse.' But rather than expressing remorse for his sustained criminal conduct, he expressed 'deep remorse that I say these words.'" Similarly, according to the Government, Howe expressed "regrets" only "for allowing myself to be sucked into this fraudulent scheme for which I am now convicted." So, under the Government's theory, Howe's "remorse" and "regrets" show just how sneaky he really is: his only real regret is that he was caught.

The problem with all this parsing is that it would require us to overrule the District Court's first-hand observation of Howe's allocution based on our own post hoc reading of the

14

record.  But the task of discerning sincerity lies squarely with the district judge, who observes first-hand the words as they are communicated live.  *See United States v. McIntosh*, 198 F.3d 995, 1001 (7th Cir. 2000) ("[T]he district court has a responsibility to look at the whole picture when making its determination of whether a defendant has genuine remorse.  In determining a defendant's sincerity, the district court has an opportunity to observe a defendant 'firsthand' during the course of a criminal case."); *see also Gall*, 128 S. Ct. at 597-98 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." (quoting *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007))).  The Supreme Court in *Gall* also reiterated that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.  The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record."  128 S. Ct. at 597 (citation omitted).  What the district judge observes at the sentencing hearing may therefore unquestionably be taken into account as part of his "credibility determinations" and "insights not conveyed by the record."

In the case at bar, after hearing Howe's allocution, the District Court explained:

> "I couldn't disagree with you more, Mr. [AUSA], in the statement that he just read to the Court. . . .
>
> I heard that acceptance [of responsibility] at various times through Mr. Howe's recitation.

15

Reasonable people might be able to disagree on this. I don't really think so. I am not saying you are being unreasonable, Mr. [AUSA]. But my recollection is that he has accepted responsibility in that statement. I agree with you that his lawyer said that you can attribute to him, but you said what he said. What I heard him to say today I would characterize as an acceptance of responsibility. Simple as that. . . .

I have heard equivocation from that podium on many occasions throughout the almost nine years that I have been doing this, in countless sentencings over which I have presided. That was not equivocation on the issue of acceptance of responsibility that I heard from this gentleman."

While Howe's statement might plausibly be read as insincere, we are not left with a firm and definite conviction that it must be read as such. Obviously, were the District Court's factual finding in clear contradiction with what Howe actually said, we would find clear error. But we do not have that here, where Howe's entire statement is laden with his acknowledgment of "poor judgment" and "weight of guilt of selfish and incorrect acts," for which he "publicly apologize[d]" and the rehabilitation for which he was "extremely grateful."

As for the Government's emphasis on Howe's statement that he "never intended to steal from the government or cause harm to the U.S. Air Force," while there are cases that state that a district court's finding of no intent at sentencing is clearly

16

erroneous where intent is an element of the convicted offense, in this case the District Court made no such finding. Instead, it was Howe who said as part of his allocution that he did not intend to defraud – all the District Court found was that Howe showed remorse. Howe's statement that he did not intend to steal from the government is plausibly a piece of that remorse. Lay people reasonably could use the word "intend" to mean something other than the element of a crime; in context, then, the District Court did not commit clear error in interpreting that Howe, in mentioning his lack of "intent," was not denying the guilt of his convicted offense.

The Government also argues that the District Court did not adequately consider general deterrence, § 3553(a)(2)(B), in this case. There are indeed situations in which a district court's failure to adequately explain its rejection of a legally recognized sentencing factor would amount to a "significant procedural error" under *Gall*. *See* 128 S. Ct. at 597 (significant procedural error includes "failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range"); *see also United States v. Sevilla*, --- F.3d ----, No. 07-1105, 2008 WL 4069453, at *4 (3d Cir. Sept. 4, 2008) (failure to respond to defendant's "colorable arguments relating to his childhood and the crack/powder disparity other than to say that it had 'considered all of the [§] 3553(a) factors'" constituted procedural error requiring remand); *Kononchuk*, 485 F.3d at 204-05 ("when the objections have legal merit, the considerations countervailing the district court's judgment are significant and worthy of response").

17

But *Sevilla* and *Kononchuk* are readily distinguishable on their facts.  In *Sevilla*, the defendant-appellant had raised his legally recognized grounds for downward variance in a written sentencing memorandum prior to the sentencing hearing.  --- F.3d at ----, 2008 WL 4069453, at \*1.  In *Kononchuk*, the government-appellant at the sentencing hearing had gone to great lengths to "emphasize[] the sophistication and deliberateness of Kononchuk's scheme, as well as the need for consistency in punishment between like offenders. . . .  The government objected strenuously to what it saw as the District Court's willingness to allow someone to avoid a sentence of imprisonment simply because he had the financial capability to pay restitution . . . ."  485 F.3d at 202.  Yet, the district court in that case "did not explain what warranted the disparity in treatment between" two similarly situated defendants, *id.* at 205, nor did it adequately explain why it "favor[ed] the restitution aspect of punishment over the incarceration aspect." *Id.* at 206.

By contrast, the record in this case reveals that the colloquy between the Government and the District Court focused mostly on the degree of remorse exhibited by Howe, rather than the importance of general deterrence.  The only time the Government said anything about general deterrence was its statement that "the Court is required under [§] 3553(a) to consider . . . , among other objectives, . . . deterrence in the community at large."  This hardly qualifies as a "strenuous objection."  Nor did the Government file a written sentencing memorandum prior to the sentencing hearing.  The District Court's response in this case, therefore, need not have gone beyond its mention of "deterrence" in its statement of reasons. *See United States v. Ausburn*, 502 F.3d 313, 328-29 (3d Cir.

18

2007) ("a rote statement of the § 3553(a) factors will not always be either necessary or sufficient to satisfy the requirements of reasonableness" (internal quotation marks and comma omitted)). A contrary result in this case would ignore our equally well-established precedent that a district court is "not required to comment explicitly on every § 3553(a) factor because 'the record makes clear the court took the factors into account in sentencing.'" *United States v. Parker*, 462 F.3d 273, 278 (3d Cir. 2006) (quoting *Cooper*, 437 F.3d at 239). We are thus satisfied in this case that the District Court adequately considered general deterrence in its statement of reasons.

In this case, then, the Government cannot plausibly argue that the District Court's lengthy explanation of Howe's history and characteristics, combined with its acknowledgment that Howe committed an "extraordinarily serious" offense, did not constitute an adequate explanation of the ultimate sentence. Further, we save for our substantive review the Government's alternative argument that the District Court should have given more weight to general deterrence, so much so that an adequate consideration of that one factor should have trumped any mitigating factors in the final sentence. The line between procedural and substantive error may sometimes be unclear, but here, the Government's argument about which sentencing factors should trump which other factors belongs in the prism of substantive review. In sum, none of the Government's contentions amount to "significant procedural error" under *Gall*.

19

**B.**

Nor is the District Court's sentence substantively unreasonable.  The Government argues that the factors upon which the District Court relied – even assuming they are not clearly erroneous as a factual matter – are not unusual enough to warrant as significant a downward variance as that granted by the District Court.[3]  *See* Br. at 19-20 ("Defendants, particularly those with no prior criminal history, routinely allege positive attributes at sentencing, including past military service, family devotion, a good reputation in the community, and church attendance.").

The Government cites *United States v. Tomko*, 498 F.3d 157 (3d Cir. 2007), to support its position.  But we vacated that opinion, 513 F.3d 360 (3d Cir. 2008), and the case's ultimate disposition remains pending.  --- F.3d ----, No. 05-4997, 2008 WL 3850081 (3d Cir. Aug. 19, 2008).  Even assuming that portions of the *Tomko* panel opinion state good law, the facts in this case are plainly distinguishable.

Here, the District Court relied on no fewer than seven reasons to justify its downward variance:  (1) Howe "led an honorable and lawful life until this point" and had no prior criminal history; (2) Howe "served in the U.S. Military for 20

---

[3]Our Court distinguishes between traditional departures based on a specific Guidelines provision and sentencing "variances" from the Guidelines based on the § 3553(a) factors. *United States v. Vampire Nation*, 451 F.3d 189, 195 n.2 (3d Cir. 2006).

years"; (3) Howe was a "well-regarded member of [his] community"; (4) Howe "regularly attend[s] church"; (5) Howe was a "devoted husband, father, and son"; (6) Howe made but an "isolated mistake" in committing his crime; and (7) Howe was remorseful at sentencing. The Government attacks a number of these findings as insufficient to support the variance. We remind the Government, however, that we must conduct our substantive review by "tak[ing] into account the totality of the circumstances." *Gall*, 128 S. Ct. at 597.

For example, the Government argues that the District Court was inconsistent in not granting a downward departure based on acceptance of responsibility, yet granting a downward variance in part because of Howe's remorse. But there is no inconsistency. With respect to a downward departure under Guidelines § 3E1.1, Application Note 2 provides:

> "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. . . . In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."

The Government cites Application Note 2 to argue that Howe's "sentencing allocution, even if it had been sincere, was not

21

sufficient to overcome the fact that he had denied his guilt and gone to trial."

This argument might have merit under the Guidelines, but it is without merit with respect to a non-Guidelines variance. *See United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006) ("That a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines."). Indeed, a defendant's degree of remorse at sentencing may be considered as a basis for downward variance under § 3553(a) regardless of whether the defendant previously accepted responsibility. *See*, *e.g.*, *United States v. Todd*, 515 F.3d 1128, 1134 n.3 (10th Cir. 2008).

In fact, if, even after a guilty plea, a defendant's demeanor at sentencing is unremorseful, the district court may properly deny an acceptance of responsibility reduction under the Guidelines. *E.g.*, *United States v. Lim*, 235 F.3d 382, 385 (8th Cir. 2000). Surely in a case like *Lim*, the Government would not argue that it was inconsistent for the district court to accept the defendant's guilty plea on the one hand, yet reject his motion for a downward departure on the other. Likewise, there is no inconsistency between the District Court's denial of an acceptance of responsibility departure based on Howe's denial of guilt at trial and its subsequent downward variance based in part on Howe's remorseful demeanor at sentencing.

The Government also avers that remorse should not support a downward variance under § 3553(a) because it reflects a characteristic that most defendants, white-collar or otherwise,

22

exhibit at sentencing.  This averment is inaccurate.  *See*, *e.g.*, *Lim*, 235 F.3d at 385 (in mail fraud case, defendant at sentencing "acts as if he ought to be given a medal for what he's done here.  He has absolutely no remorse for what he's done, none."); *United States v. Brown*, 147 F.3d 477, 486 (6th Cir. 1998) (in mail and wire fraud case, defendant "showed no remorse and did not think he did anything wrong"); *United States v. Young*, 132 F.3d 44 (10th Cir. 1997) (in mail of threats case, "although [defendant] admitted committing the crimes and pled guilty, she showed no remorse"); *United States v. Castner*, 50 F.3d 1267, 1280 (4th Cir. 1995) (in mail fraud case, defendants "showed no remorse whatsoever for blatantly cheating the United States Government out of in excess of $50,000." (internal quotation marks and alterations omitted)). Therefore, Howe's remorse at sentencing is a factor that may distinguish him from the universe of white-collar offenders.

Nor did Howe's remorse have to be extraordinary.  *See Gall*, 128 S. Ct. at 595 ("We reject . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.").  We acknowledge that defendants can easily put on an act at sentencing, feigning remorse, when in fact they are not remorseful at all, especially when they have shown no remorse until the day of sentencing. But, for reasons we have already articulated, we will not categorically prohibit a district court from taking a defendant's demeanor at sentencing into account.  We therefore continue to permit the district court to discern, as part of its credibility determinations, the level of sincerity of a defendant's remorse. So long as there is no clear error in these determinations and hence no significant procedural error, we will not vacate a

23

sentence as substantively unreasonable simply because it is based on them to some extent.

In any event, remorse is not the only basis for the variance in this case. Another justification was Howe's twenty years of military service followed by honorable discharge. The Government brushes that justification aside with the conclusory averment that this factor does "not meaningfully distinguish Howe from other defendants . . . ." But the Government cites no evidence that most defendants, white-collar or otherwise, in fact have lengthy and positive records of past military service, whereas it is the Government as appellant whose burden it is to establish that a sentencing factor is unreasonable. Further, the argument that any military service must be "exceptional" is not suitable to our review of a district court's analysis under § 3553(a).

Indeed, the Supreme Court included military service as a reason to affirm the district court's below-Guidelines sentence in *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007) ("he had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps, and that he had a steady history of employment"). While this consideration alone might not be enough to warrant the downward variance to probation in this case, *Kimbrough* makes clear that it may be considered as one of the factors. The offender-specific characteristics of remorse and military service, especially when combined with the five other factual findings supporting variance listed above, none of which the Government

24

claims may not factor into the District Court's decisionmaking,[4] could therefore support the Court's decision to vary downward to probation.

The Government next argues that the District Court "paid scant attention to the 'nature and circumstance of the offense,'" while placing "the entire focus . . . on the 'history and characteristics of the defendant'" (quoting § 3553(a)(1)). But this averment is belied by the Government's own statement that the Court characterized Howe's crime as an "isolated mistake." Moreover, the District Court explicitly considered the nature and circumstances of the offense by stating that the prosecutor "has not overreached at all in his description of the nature of the offense and the calculated nature of the offense, and the taking advantage of special knowledge that you possessed and to which you came to possess during the course of your service." This does not constitute "scant attention" to the nature and circumstances of Howe's offense.

Therefore, the § 3553(a) factors in their totality reasonably support the sentence imposed in this case, and the District Court did not abuse its discretion in imposing the sentence. We do not discount the importance of general deterrence under § 3553(a)(2)(B) or of the avoidance of unwarranted sentence disparities under § 3553(a)(6). In this

---

[4]Again, the Government argues that Howe did not simply make an isolated mistake as a matter of fact, but it does not argue, assuming that factual finding is not clearly erroneous, that the District Court still may not take it into consideration as a mitigating factor.

25

case, however, Howe's distinguishing characteristics render the ultimate disparity from the Guidelines reasonably warranted. In turn, we believe that a potential offender observing the sentencing proceedings would receive the message that prison time could be imposed absent those meaningful distinctions, which satisfies the § 3553(a) goal of general deterrence sufficiently under our one-step-removed abuse-of-discretion standard.

Finally, the Government cites two post-*Gall* decisions from sister courts of appeals that vacated unreasonably lenient sentences. Insofar as those courts continue to exercise substantive review of sentences post-*Gall*, of course we agree with them. The problem for the Government, however, is that there are plenty of decisions that go the other way; the question is on which side of the spectrum Howe's case falls. The point is that selectively citing those cases in which an unreasonably lenient sentence was found will not do.

For example, the Government cites *United States v. Omole*, 523 F.3d 691 (7th Cir. 2008). In that case, the Seventh Circuit found that a defendant's 12-month sentence for wire fraud was substantively unreasonable where the Guidelines range was 63 to 78 months because the court was "wary of divergent sentences based on characteristics that are common to similarly situated defendants." *Id.* at 698. But as we have explained, the District Court in this case identified a number of factors that are not "common to similarly situated defendants." In *Omole*, the district court hung its hat on the defendant's youth, limited criminal history, and potential for rehabilitation. Here, the District Court relied on considerably more, i.e., all

26

seven factors enumerated above, from military service to genuine remorse.

Indeed, the Seventh Circuit in a pre-*Gall* case (so perhaps less deferential to the sentencing court), *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007), reached a very different conclusion from the one in *Omale*. In *Wachowiak*, the court first identified four of its own cases, including two white-collar cases, in which it had vacated sentences as unreasonably lenient, *id.* at 751-52, but proceeded to distinguish those cases because, "[i]n addition to Wachowiak's law-abiding past and sincere remorse, the judge found that he was 'a kind, caring individual, who enjoyed the broad support of family, friends, colleagues, and teachers' and 'demonstrated strength of character in confronting his problems,' none of which were reflected in Wachowiak's Category I criminal history under the guidelines." *Id.* at 754. Anticipating the counterargument that many first-time offenders share these characteristics, the Seventh Circuit wrote: "While Wachowiak may be a typical offender in some respects, [the district judge] sufficiently explained why in his judgment, Wachowiak's degree of remorse and his otherwise good character set him apart from more run-of-the-mill child pornography offenders." *Id.* Likewise, the District Court did not do anything unreasonable on this record in concluding that Howe's criminal profile is deserving of a downward variance more than the typical white-collar offender.

The other case the Government cites is *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008). There, the Sixth Circuit held over a dissent that a sentence of probation was unreasonably lenient in a health care fraud case when the

27

advisory Guidelines range was 27 to 33 months. But that case is even more different from the one here, because there the district court "appears to have relied in substantial part on its doubt that Hunt intended to commit fraud." *Id.* at 649.[5] The Sixth Circuit reached a very different conclusion in *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008), in which the district court sentenced a child-pornography possessor to 66 months instead of the 120 months recommended by the Guidelines. There, the Sixth Circuit concluded that "[t]he district court never lost sight of the sentence recommended by the guidelines and gave ample reasons for reducing the sentence as far as he did." *Id.* at 597. Again, the point is that each case must be reviewed on its own, and what the District Court did here is more akin to what district courts have done in cases in which their sentences have been upheld.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5]Again, in our case it was Howe and only Howe who said he never intended to steal or cause harm to the government. The district court in *Hunt*, by contrast, itself stated: "The jury found he had fraudulent intent, but the court can certainly consider those things in sentencing despite the jury's finding." *Id.* at 650. No such indication of inconsistency on the part of the District Court occurred here.