**UNITED STATES of America**

v.

**Manley GREY, Appellant.**

No. 08–2438.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 11, 2010.

Filed: March 10, 2010.

George S. Leone, Esq., John F. Romano, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

Timothy M. Donohue, Esq., Arleo, Donohue & Biancamano, West Orange, NJ, for Appellant.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Defendant Manley Grey a/k/a John Low pleaded guilty to conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951(a)) and use of a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)). Grey was sentenced to 191 months imprisonment. Grey challenges his sentence. We will affirm.

## I.

Grey conspired along with three others to rob an armored car. Enlisting Evrol Dean, an employee of the armored car company, the four planned to sneak Grey and another co-conspirator into the armored car through an unlocked door. Grey and the cohort would then "instruct" Dean to drive to a secluded location. The fourth member of the conspiracy, Marvin Tillman, agreed to follow the armored car and transfer the money to his getaway vehicle. According to Grey, the amount they planned to steal was approximately $150,000. However, the targeted armored car would be carrying over $1 million on the day of the robbery.

The four men committed the robbery on February 14, 2006. Dean, as planned, left one of the doors to the armored vehicle unlocked as he entered a bank in Livingston, New Jersey with his unwitting partner. Grey and a fellow co-conspirator, armed with handguns, entered the truck and waited while the vehicle was stopped to pick up a deposit. Once Dean and his partner returned, Grey pointed his gun at Dean's partner and instructed him not to move. When Dean's partner attempted to foil the robbery, Grey shot him twice at point-blank range. The partner leaped from the armored car and called for help. His life was saved only by his bullet-proof vest.

Grey and his co-conspirators, now in sole possession of the armored car, drove approximately 200 feet. They then stopped, exited the armored car, and emptied sacks of money (approximately $90,000) into Tillman's getaway vehicle. Police apprehended Grey and his co-conspirators after a high speed chase.

Grey was charged in three counts of a four-count indictment and pleaded guilty to two charges: conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). At sentencing, the District Court found Grey responsible for over $1 million in loss, stating that "for a period of time [the defendants] were in sole control of an armored car with $ 1.1 million." Consequently, the District Court imposed a four-level sentencing enhancement under United States Sentencing Guideline § 2B3.1(b)(7)(E) (2008).[1] Grey challenges his sentence on two grounds, arguing the District Court erred in its loss calculation and failed to give adequate consideration to the 18 U.S.C. § 3553(a) factors.[2]

---

1. Under U.S.S.G. § 2B3.1(b)(7)(E), a four-level enhancement is applied for a loss of more than $800,000 but less than $1,500,000.

   Applying the four-level enhancement provided in U.S.S.G. § 2B3.1(b)(7)(E), the Court arrived at a total offense level of 25, which, when coupled with Grey's criminal history of I, yielded an advisory Guidelines range of 57–71 months on the conspiracy count, to be followed by a mandatory consecutive sentence of 120 months on the § 924(c) conviction. As noted, the court sentenced Grey to 191 months imprisonment; 71 months on Count 1 followed by a mandatory consecutive 120–month sentence on Count 4.

2. The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Grey's appeal under 18 U.S.C. § 3742(a). We review a district

## II.

██ Grey contends the court erred by calculating loss to be $1.165 million because the conspirators did not intend to steal more than $150,000 and in fact only "stole" approximately $90,000. Grey argues that loss, as outlined in U.S.S.G. § 2B1.1 cmt. n. 3(A)(ii), must be calculated only on the pecuniary harm that was intended to result from the offense.[3] The District Court here correctly calculated loss in accordance with § 2B3.1, which addresses robbery, not § 2B1.1 cmt. n. 3, which addresses theft, embezzlement, receipt of stolen property, property destruction and offenses involving fraud or deceit. *See United States v. Allen,* 516 F.3d 364, 378–379 (6th Cir.2008) (finding the Commission's amendment to § 2B1.1, instructing courts to use "the greater of actual loss or intended loss," did not affect the definition of loss under § 2B3.1).

Section 2B3.1 cmt. n. 3 defines "loss" for purposes of robbery as "the value of the property taken, damaged or destroyed." It is undisputed that the total amount of cash in the armored car was $1.165 million. When Grey and his co-conspirators commandeered the armored car, they took dominion and control over the total amount of $1.165 million. By exercising such dominion and control, Grey and his co-conspirators had "taken" all the money in the armored car as that term is set forth under § 2B3.1 cmt. n. 3. Grey and his co-conspirators moved the cash at will when they drove away in the armored car. They had seized the entire amount. Accordingly, the loss calculation must include the entire amount. Thus, the District Court's loss calculation correctly reflects the amount which Grey had "taken" as $1.165 million.[4]

In *United States v. Allen,* the Court of Appeals for the Sixth Circuit held "a robber 'takes' an object, for purposes of § 2B3.1, when the robber exercises dominion and control over that object, such that the robber has completed the acts necessary to seize that object." 516 F.3d at 380. In *Allen,* all co-conspirators pleaded guilty to stealing rare, expensive books from a university library. *Id.* at 366. In the course of the theft, defendants realized they were ill-prepared to remove such a large number of books, so they decided to leave those they could not carry. *Id.* at 369. The defendants were caught attempting to escape via a stairwell by a librarian. *Id.* Frightened at being discovered, they dropped several of the stolen books before fleeing the library. *Id.* The district court declined to include in the loss calculation the value of the books the defendants could not carry or dropped.

---

court's determination of loss for clear error. *United States v. Brennan,* 326 F.3d 176, 194 (3d Cir.2003). We review a district court's sentence for reasonableness. *United States v. Booker,* 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**3.** Grey fails to note that "intended loss" also "includes intended pecuniary harm that would have been impossible or unlikely to occur...." *See* U.S.S.G. § 2B1.1. cmt. n. 3(A)(ii)(II).

**4.** Relying on *United States v. Collado,* 975 F.2d 985 (3d Cir.1992), Grey also argues he should not be held responsible for the amount of money stolen by his co-conspirators because he only agreed to steal between $100,000 and $150,000. However, in *Collado* we addressed an issue of accomplice attribution in which the defendant in a conspiracy had not performed the criminal acts charged. That argument is inapplicable here. Grey acted with his co-conspirators in stealing the armored car and the cash inside. The District Court did not rely upon the actions of others, exclusive of Grey's own actions, to calculate Grey's base offense level. Thus, because Grey actively participated in the robbery, *Collado's* accomplice attribution argument does not apply.

The government appealed the sentence and the Sixth Circuit concluded the district court's loss calculation should have included the books left behind and dropped by the defendants. *Id.* at 381. The court found that the defendants had taken all the books because "they moved them at will; they could have damaged them, destroyed them, hidden them, played with them or—as they did—prepared them to be carried away." *Id.*

Similarly, the Second Circuit has held loss calculation includes property over which the defendant exercised only temporary dominion and control. *United States v. Parker,* 903 F.2d 91, 105 (2d Cir.1990).[5] The defendants in *Parker* conspired to rob a deposit vehicle belonging to a check cashing firm. *Id.* at 95–96. After stealing the vehicle, the defendants transferred a substantial portion, but not all, of the money into a getaway car and fled. *Id.* at 96. The court found the defendants responsible for the entire amount of money in the stolen deposit vehicle because they had exercised dominion and control over the entire lot of cash. *Id.* at 105. Although a portion of the money was not transferred into the getaway car that "[did] not mean that they had not taken it." *Id.*

Accordingly, the District Court correctly calculated loss under the Sentencing Guidelines.

### III.

 Grey also argues the District Court's sentence is unreasonable because it failed to adequately consider the 18 U.S.C. § 3553(a) factors in sentencing him at the high end of the advisory guideline range.

We evaluate a sentence by reviewing the court's record considering the relevant factors in § 3553(a). *United States v. King,* 454 F.3d 187, 194 (3d Cir.2006). The sentencing judge need not explicitly comment on every factor if "the record makes clear the court took the factors into account in sentencing." *United States v. Howe,* 543 F.3d 128, 137 (3d Cir.2008). We are satisfied that the District Court adequately considered and weighed the § 3553(a) factors.

The District Court took care to consider and explain its sentence to Grey. Grey argued he was less culpable than his co-defendants, that he had no intent to shoot the security guard, and that the poor conditions at the jail in which Grey was held before trial warranted a reduction in sentence. Despite Grey's mitigating arguments, the District Court reasonably cited the seriousness of the offense[6] under 18 U.S.C. § 3553(a)(1) and (2)(A) and the need to deter Grey and others under § 3553(a)(2)(B).

### IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

**5.** The *Parker* court interpreted the same language contained in what is now § 2B3.1 cmt. n. 3 prior to the Commission's amendments to § 2B1.1. At the time *Parker* was decided, § 2B1.1 defined "loss" as "the value of the property taken, damaged or destroyed." U.S.S.G. § 2B1.1. cmt. n. 2 (1990).

**6.** As the Government properly pointed out, Grey was "the most culpable of all the defendants involved in this case," as he "actually shot an innocent man" after pointing a loaded gun at him. The Court stressed the seriousness of this conduct, noting that a mere fortuity was all that prevented this prosecution from being one for "murder."