NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0901n.06

No. 12-3026

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 15, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| JOSEPH C. CARVER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

GRIFFIN, Circuit Judge.

Joseph Carver was convicted of concealing assets in bankruptcy, in violation of 18 U.S.C. § 152(1), and of making a false statement under oath in bankruptcy, in violation of 18 U.S.C. § 152(2). He was sentenced to 24 months' imprisonment on each count to run concurrently, plus three years of supervised release. Carver appeals his convictions and sentences. We affirm.

I.

Carver filed for bankruptcy in October 2005. One of his assets was an extensive wine collection that he owned in both his personal capacity and as the sole owner of his medical practice corporation, Joseph C. Carver, M.D., Inc. An October 2003 personal financial statement valued his wine at $825,000; a July 2004 balance sheet for Joseph C. Carver, M.D., Inc., valued its wine

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

collection at $377,093.17. Carver's entire wine collection, along with other assets and a personal guarantee, secured a loan his corporation had with the Citizens Banking Company.

In October 2004, Carver consigned his entire wine collection to a wine auction house, Acker Merrall & Condit Company ("AMCC"). When AMCC took possession of the wine in October 2004, Carver requested that the wine not be stored under his name, but he did not provide an alternative name to AMCC. Over the following two and one-half years, the wine was auctioned off. Carver directed AMCC when to sell the wine and to whom the proceeds should be remitted.

On October 15, 2005, Carver filed for Chapter 7 bankruptcy. During that process, he filled out intake forms, which listed his personal assets and liabilities, as well as those of his corporation. Nowhere on the intake forms did Carver disclose that he or the corporation owned wine and had any money due from the sale of wine. Carver told his attorney that he once had a wine collection, which had been owned by the corporation and by himself personally, but that it had all been sold in January 2005.

A meeting of creditors was held on December 23, 2005. At that time, Carver's corporation still owed Citizens Banking over $100,000, and Citizens' attorney, Daniel McGookey, wanted to find out what happened to its wine collateral, which had been valued at over $500,000. After McGookey asked his questions, Bankruptcy Trustee Louis Yoppolo inquired directly as to the existence of the wine collection:

THE TRUSTEE: Can I ask you, is there anything left now of the wine inventory?

CARVER: No. The entire collection was sold . . .

At the conclusion of the creditors' meeting, both McGookey and Yoppolo thus believed that all of Carver's wine collection had been sold in January 2005. It turned out, however, that not all of Carver's wine had been sold at that time.

From September 2005 to August 2006, during the pendency of his bankruptcy proceedings, and both before and after his statement at the creditor's meeting, Carver directed AMCC to sell more of his wine and remit $195,125.84 in proceeds to third parties. Eleven sales and checks totaling $74,000 were made payable to Dr. Frank Komorowski, and $119,083.84 was made payable to Carver's future wife Bridget Oney Carver, a mutual fund account that she held, and her American Express account.

The government subsequently brought criminal charges against Carver. By grand jury indictment, Carver was charged with unlawfully concealing assets in the bankruptcy proceeding (Count 1), falsely stating under oath in the bankruptcy proceeding that all of the wine inventory was sold (Count 2), and creating false documents (i.e., promissory notes purportedly showing that Komorowski was lending Carver money when in reality Komorowski was paying Carver the proceeds from sales of the concealed wine) (Count 3). The jury eventually returned a verdict of guilty on the first two counts and a verdict of not guilty on the third.

The case proceeded to sentencing. At the sentencing hearing, the district court determined that the loss amount was $195,625.84, resulting in a ten-level increase to Carver's offense level; the court also found that the victims included the 47 unsecured creditors listed in Carver's bankruptcy petition, as well as the trustee, resulting in a two-level increase to Carver's offense level. The district

court then varied downward from the resulting Guidelines range of 33 to 41 months, and sentenced Carver to 24 months' imprisonment and 3 years of supervised release. It ordered Carver to pay $160,674.84 in restitution and a $200 special assessment.

Carver timely appeals.

II.

Carver challenges the sufficiency of the evidence supporting his convictions. He claims that in light of his disclosures to his attorney, and his efforts to satisfy his creditors throughout the duration of his bankruptcy case, the jury could not have reasonably concluded that he knowingly concealed assets or made a false statement under oath in bankruptcy. We disagree.

The question in sufficiency-of-the-evidence challenges is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004) (citation and internal quotation marks omitted). We will reverse a judgment for insufficiency of evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). In so doing, "we do not weigh the evidence, evaluate witness credibility, or displace the jury's judgment with our own." *Wagner*, 382 F.3d at 610-11.

To be convicted of concealing assets in bankruptcy, in violation of 18 U.S.C. § 152(1), the evidence must show that a bankruptcy proceeding existed under the Bankruptcy Code, the defendant concealed interests in property from the bankruptcy trustee or creditors, such interests in property

belonged to the bankruptcy estate of the defendant, and the defendant acted knowingly and fraudulently. *Wagner*, 382 F.3d at 607. A conviction for making a false oath in bankruptcy, in violation of 18 U.S.C. § 152(2), requires proof that there was a bankruptcy proceeding, the defendant made or caused to be made a false declaration or statement under penalty of perjury in the proceeding, the declaration related to some material matter, the declaration was false, and the defendant made the declaration knowingly and fraudulently. Sixth Circuit Pattern Criminal Jury Instructions § 10.01 (2011) (mail fraud) (adapted); *cf. United States v. Spurlin*, 664 F.3d 954, 962 (5th Cir. 2011). Carver's convictions for these crimes are amply supported by the evidence.

A rational trier of fact could have found the elements of concealing assets in bankruptcy satisfied beyond a reasonable doubt because there was evidence that Carver failed to list his wine in the intake sheets he provided to his attorney; he signed under oath his bankruptcy petition in which the only reference to the wine was his false statement that it had been "sold January 2005"; and he filed an amended Schedule B and a motion to abandon stock representing that his solely-owned corporation was insolvent, yet he failed to list the wine as an asset. Additionally, both before and after his bankruptcy proceeding, Carver directed that the funds from the wine sales be remitted to either Joseph C. Carver or Joseph C. Carver, M.D., Inc., but, in contrast, during the proceeding, he directed AMCC to remit the proceeds almost exclusively to third-party nominees. There was even evidence he tried to make it appear that the wine proceeds from the third-party transactions were personal loans.

A rational trier of fact also could have found that the elements of making a false statement under oath in bankruptcy were satisfied beyond a reasonable doubt. At the meeting of creditors on December 23, 2005, the trustee asked Carver, "[I]s there anything left now of the wine inventory?" and Carver responded, "No. The entire collection was sold[.]" This statement was false, and there was evidence that Carver knew it was false. Carver resists this conclusion, claiming that his statement was "literally truthful" because he did not, at the time of the questioning, possess a wine inventory, and because he was referring only to his personal wine collection rather than his corporate wine collection.[1] But this argument is unpersuasive. The fact that Carver did not *possess* the wine at the time of his questioning does not mean that it was *sold*; and the exchange between Carver and the trustee reflects that Carver was referring to the "entire" collection of wine, both personal and corporate. The evidence was therefore sufficient to sustain Carver's convictions.

Carver next challenges his sentence as both procedurally and substantively unreasonable. We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). There are two steps to our review. We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

---

[1]The government argues that the "literally true" defense does not apply to this charge, but only to perjury charges. However, we need not reach the question given that Carver's statement was not literally true.

sentence[.]" *Id.* at 51. Next, if we determine "that the district court's sentencing decision is procedurally sound," we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," taking into account the "totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*

We address Carver's procedural-reasonableness argument first. According to Carver, his sentence is procedurally unreasonable because the district court erred in calculating the loss amount and in determining that there were more than ten victims of his concealment of the wine collection. Citizens Banking was the only creditor victimized, he claims, because it was the only one with a security interest in the wine, and it suffered no loss because it was eventually repaid. We disagree. For purposes of § 2B1.1, a "victim" is defined as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1) . . . ." U.S.S.G. § 2B1.1 cmt n.1. Here, contrary to Carver's contention, it was not just Citizens Banking that was victimized: Carver's fraudulent concealment of the wine prevented all 47 of his unsecured creditors from being paid a pro rata share of the surplus proceeds from the sale of the concealed wine. *See generally* 11 U.S.C. § 726 (distribution of property of the estate).

Once more, Carver attempts to draw a distinction between the wine owned by his corporation and the wine owned by him personally, asserting without citation to any evidence that "the wine was a corporate asset" and "was not an asset of the debtor's personal bankruptcy estate." However, the jury was free to conclude that the concealed wine was not all corporate wine, especially given the lengths Carver went to hide it. And even if the concealed wine was owned entirely by Carver's

corporation, it nonetheless would have become a part of Carver's personal bankruptcy estate because he was the sole owner of his medical practice. (We note in this regard that Carver does not claim that the value of his stock would have been unaffected by the inclusion of the wine in the corporation's assets.) The district court did not clearly err in concluding that there were more than ten victims of Carver's concealment of bankruptcy assets for purposes of applying U.S.S.G. § 2B1.1(b)(2)(A).

Carver's contention that the district court improperly calculated the loss amount fails for much the same reason. The determination of the amount of loss is a finding of fact that we will not disturb unless clearly erroneous. *See United States v. Comer*, 93 F.3d 1271, 1285 (6th Cir. 1996). The applicable Guideline in this case defines "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt n.3(A)(i). It then defines "reasonably foreseeable pecuniary harm" as the "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* at cmt n.3(A)(iv). At sentencing, the district court found that actual loss was $195,625.84, justifying a two-level increase under U.S.S.G. § 2B1.1(b)(2)(A). We see no clear error in this determination. Carver's assertion that the loss amount should have been limited to the amount he owed to Citizens Banking ignores the fact that Citizens Banking was not the only creditor harmed by his concealment of the wine. Carver's sentence is procedurally reasonable.

We now turn to Carver's claim that his sentence is substantively unreasonable. Carver contends that his sentence fails substantive-reasonableness review because he "had already been

severely punished by the collateral consequences of his conviction," his "conviction stood as an aberration in an otherwise law abiding life," and "[w]hen weighed against the character and nature of his offense, [his] personal and social history did not call for two years in federal prison." He also asserts that the district court should have considered his argument that the calculated Guideline score failed to properly reflect § 3553(a) considerations, demonstrating that a below-Guidelines sentence was appropriate. And he compares his case to *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008), where the district court imposed, and the Court of Appeals for the Third Circuit affirmed, a sentence of probation with a condition of home confinement for wire fraud, despite an 18 to 24-month Guideline range. *Id.* at 137-41. We find Carver's arguments unavailing.

A sentence may be substantively unreasonable if the district court arbitrarily selects the sentence, bases the sentence on impermissible factors, fails to consider the factors under 18 U.S.C. § 3553(a), or gives an unreasonable amount of weight to any pertinent factor. *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007). The district court made none of these errors here. Moreover, it *did* impose a below-Guidelines sentence, explaining that "a downward variance is appropriate for the good chapters in your life and for the efforts you've made," to which we may, and do, apply a presumption of reasonableness. *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008); *see, e.g.*, *United States v. Davis*, 407 F. App'x 32, 44 (6th Cir. 2011). That presumption has not been overcome. Notwithstanding Carver's suggestion, the fact that a less severe below-Guidelines sentence in *Howe* was found to be reasonable by our sister circuit does not show that a

more severe below-Guidelines sentence in this case was not. Carver's sentence is substantively reasonable.

III.

For these reasons, we affirm.