**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1533
_____

UNITED STATES OF AMERICA

v.

GREGORY O. O'NEAL a/k/a G

GREGORY O. O'NEAL,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-09-cr-00346-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2012

Before:  HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: June 4, 2013)

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

Gregory O'Neal appeals from a judgment of sentence entered by the District Court pursuant to his plea of guilty to one count of conspiracy to distribute fifty grams or more of crack cocaine, and one count of distribution of fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Finding no error in the District Court's judgment, we will affirm.

I.

Because we write primarily for the parties who are familiar with this case, we need only recite the facts necessary for our discussion. On October 22, 2009, a federal grand jury handed down an indictment charging O'Neal with one count of conspiracy to distribute crack cocaine, and one count of distribution of fifty grams or more of crack cocaine. The indictment charged that O'Neal, along with six other individuals from Rochester, New York, had supplied powder and crack cocaine to Paul Surine and Lisa Lehman who, in turn, sold the drugs out of the trailer they shared in Tioga County, Pennsylvania.

On July 22, 2011, O'Neal pled guilty to both counts. After the District Court accepted the plea, the U.S. Probation Office prepared a presentence report that concluded O'Neal was responsible for at least 7.65 kilograms of crack cocaine. O'Neal objected to that quantity. Accordingly, the District Court scheduled a hearing. At the conclusion of that hearing, the District Court found that O'Neal supplied, at a minimum, 648 grams each of crack and powder cocaine, which resulted in an total offense level of 31 under the U.S. Sentencing Guidelines (the "Guidelines"), and a Guidelines range of 168 to 210

2

months.[1]  The District Court sentenced him to 188 months of incarceration.  O'Neal now appeals, challenging the District Court's findings as to the quantity of drugs attributable to him.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## A.

O'Neal first argues the District Court's fact-finding as to the quantity of drugs attributable to him was speculative, and that the evidence at most supports a finding that he is responsible for 129 grams each of crack and powder cocaine, which would result in a base offense level of 28, a total offense level of 27, and, with O'Neal's Criminal History Category of V, a resulting Guidelines range of 120 to 150 months.  We review a district court's factual findings as to the quantity of drugs for clear error.  *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).

At sentencing, the government bears the burden of proving drug quantities by a preponderance of the evidence.  *United States v. Self*, 681 F.3d 190, 201 (3d Cir. 2012).  Where, as here, there is no drug seizure, the Guidelines counsel the court to "approximate the quantity of the controlled substance."  U.S.S.G. § 2D1.1 cmt. n.5.  The district court's

_____

[1] The parties do not dispute that the District Court's findings result in a base offense level of 32, and a total offense level of 31.  The District Court arrived at the total offense level by establishing a base offense level of 32 due to the amount of crack and powder cocaine attributed to O'Neal, *see* U.S.S.G. § 2D1.1(c)(4), applying a two-level firearms enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), and a three-level acceptance of responsibility reduction pursuant to U.S.S.G. § 3E1.1(b).

3

approximation must, however, be supported by a preponderance of the evidence; this requirement distinguishes permissible estimation from mere guesswork. *See United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993).

Here, the District Court's finding that O'Neal was, at a minimum, responsible for 648 grams each of crack and powder cocaine is soundly supported in the record. The District Court arrived at this estimate by multiplying the number of months O'Neal supplied cocaine to Surine and Lehman by a minimum weekly quantity fairly attributable to O'Neal. Thus, the District Court's calculation of the quantity of drugs for which O'Neal is responsible rests on two distinct findings: (1) the length of time O'Neal supplied the cocaine, and (2) a minimum weekly quantity attributable to him. We are satisfied that both findings are supported by a preponderance of the evidence.

First, the District Court made a finding as to the length of O'Neal's involvement, concluding that he worked as a cocaine supplier to Surine and Lehman from August 2005 through January 2007. That finding was supported by the testimony of Lisa Lehman that the drug conspiracy lasted for eighteen to twenty months ending in February 2007, and that she first dealt with O'Neal in August 2005. (A. 97, 116.) Additionally, the District Court subtracted the four and one-half months that O'Neal was incarcerated (from December 2005 through April 2006). (A. 159.) Accordingly, the District Court found that O'Neal's involvement as a drug supplier totaled thirteen and one-half months. (A. 159-60.)

O'Neal contends the District Court erred by counting August 2005 in its calculation because Lehman's testimony did not establish exactly *when* in August his

4

involvement commenced and, therefore, it was speculative for the District Court to count that month. This argument is unavailing. We will not disturb a factual finding of the District Court absent clear error, and a finding is not clearly erroneous unless the reviewing body "is left with the definite and firm conviction that a mistake has been committed." *United States v. Howe*, 543 F.3d 128, 133 (3d Cir. 2008) (internal quotation marks omitted). We are left with no such conviction that the District Court erred in including August 2005 in its calculation.

Second, the District Court found that O'Neal could be held responsible for, at a minimum, one ounce (28 grams) per week during his involvement prior to August 2006, and for half an ounce (14 grams) per week from September 2006 through January 2007. The District Court attributed half of the weekly quantity to crack cocaine, and half to powder cocaine. This finding is supported by Lehman's testimony that the deliveries consisted of fifty percent crack and fifty percent powder cocaine. (A. 97.) The difference in amount between the periods before and after August 2006 was supported by Lehman's testimony that the frequency of deliveries diminished following a robbery of Surine and Lehman that month. Specifically, Lehman testified that prior to August 2006 she received deliveries of cocaine "every other day," but that after the robbery deliveries dwindled to approximately "every two to three days." (A. 115.)

The quantity attributed to O'Neal is supported in the record by testimony about the total weekly amount Surine and Lehman received, coupled with testimony that O'Neal was the primary supplier for at least part of the conspiracy. As O'Neal conceded at the sentencing hearing, the testimony supported the conclusion that Surine and Lehman were

5

receiving a total of "four or five ounces per week" from the various Rochester dealers prior to August 2006. (A. 163.) O'Neal asserts he should be held responsible for only one-seventh of the total drugs sold during the period of his involvement because he was one of seven suppliers of the Surine organization. This assertion ignores testimony explicitly credited by the District Court that O'Neal, in coordination with one other dealer, "became the major supplier of crack cocaine to the drug trafficking organization." (A. 160.) Given that finding, the District Court's decision to hold O'Neal responsible for only one ounce per week is supported by at least a preponderance of the evidence, since "[c]learly at various points in time it was significantly more than an ounce. Also clearly on some occasions it may have been less than an ounce." (A. 161.) We are satisfied that the District Court's factual findings are supported by a preponderance of the evidence, and, thus, the District Court committed no clear error in attributing 648 grams each of crack and powder cocaine to O'Neal.

### B.

O'Neal next argues that his sentence violates due process and his Sixth Amendment right to a jury trial because the District Court found facts relevant to sentencing by a preponderance of the evidence, rather than by proof beyond a reasonable doubt. This argument is clearly foreclosed by the precedent of the United States Supreme Court as well as the precedent of this Circuit. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court declared that the Guidelines would thereafter be "effectively advisory." *Id.* at 245. In so doing, the Court held that a sentencing judge can find facts relevant to the Guidelines, which do not increase the maximum statutory punishment to

which the defendant is exposed, without violating a defendant's Sixth Amendment right to a jury trial. *Id.* at 233. Following *Booker*, we held that sentencing courts may find "all facts relevant to the Guidelines" by a preponderance of the evidence rather than by proof beyond a reasonable doubt without running afoul of the Due Process Clause of the Fifth Amendment. *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (en banc). Because O'Neal's sentence is well within the range authorized by 21 U.S.C. § 841(b)(1)(B), the District Court's findings regarding drug quantities, although they resulted in an increased advisory Guidelines range, do not implicate the Fifth or Sixth Amendments. *See Grier*, 475 F.3d at 562.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.