NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0559n.06

No. 19-3523

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 02, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

  v.

KEVIN R. FOSTER,

 Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

___

BEFORE: BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted defendant Kevin Foster of sixteen counts for his role in an investment scam. He contends on appeal that the evidence supporting one of his convictions was insufficient, that the district court erred in allowing certain testimony, and that the district court erroneously calculated the amount of loss attributable to him. We affirm.

I.

This direct criminal appeal is one of several stemming from the OXYwater fraudulent-investment scheme that bilked investors out of millions of dollars. *See, e.g.*, *United States v. Harrison*, 663 F. App'x 460 (6th Cir. 2016); *United States v. Jackson*, 662 F. App'x 416 (6th Cir. 2016). In short, business partners Thomas Jackson and Preston Harrison developed and marketed a sports beverage through their company, Imperial Integrative Health and Research Development. The two quickly raised millions of dollars from investors based on false information and converted

a significant portion of these funds for their own personal use. They were convicted of multiple counts of wire fraud, money laundering, and tax fraud.

Defendant Kevin Foster, a manager in the entertainment business, joined Imperial and secured investments from two of his clients, Shaffer Smith and Brian McKnight. Smith authorized Foster to invest $2,000,000, and McKnight agreed to invest $50,000. But Foster did more than that. He drew more money than authorized (multiple times over) and did so without disclosing that he had an interest in Imperial and stood to gain a ten-percent commission on the investments. Their losses alone totaled over $6,000,000.

A jury convicted Foster of sixteen counts related to his participation in the scheme: four counts of wire fraud; five counts of money laundering; one count of bankruptcy fraud; two counts of tax evasion; and four counts of filing a false tax return. The district court imposed a below-Guidelines sentence of eighty-nine months and ordered $7,973,511 in restitution. Foster timely appeals.

II.

Defendant first challenges the sufficiency of the evidence to sustain his bankruptcy-fraud conviction. In April 2013, Imperial filed a Chapter 11 bankruptcy petition. Foster signed the petition—which listed him as owning over sixty percent of the business—as Imperial's "manager and CFO." As relevant here, Foster was deposed in relation to a motion to transfer the bankruptcy case to a then-pending state-court-receivership action. There Foster testified that he affirmatively disclosed to Smith that he would receive a commission for the investments. This statement formed the basis of his bankruptcy-fraud conviction under 18 U.S.C. § 152(2), which makes it a crime to "knowingly and fraudulently make[] a false oath or account in or in relation to any" Chapter 11 bankruptcy proceeding.

Foster contends only that the government did not sufficiently prove that this statement was material to the bankruptcy proceeding. *See, e.g.*, *United States v. Carver*, 494 F. App'x 555, 558 (6th Cir. 2012). He "faces a high bar." *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). This is because we must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).[1]

Given this deferential-review standard, we cannot agree with defendant. A "misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted). The government's materiality showing "is a fairly low bar." *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001).

Consider what the government rightly argued to the jury: creditors are entitled to discover a debtor's assets and how they were gotten. So if Foster had disclosed the misstatement, bankruptcy creditors would have logically questioned what other things Foster did not disclose.

---

[1]We question whether Foster properly preserved this issue for our review. He presented the district court with what he termed a "perfunctory Rule 29" motion and made no argument as to why the district court should have ruled in his favor on the bankruptcy-fraud count. Normally such a barren argument renders it forfeited. *See, e.g.*, *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004). And failing to preserve a sufficiency-of-the-evidence challenge has consequences—review under the manifest-miscarriage-of-justice standard. *See, e.g.*, *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010). However, the government did not raise this issue and regardless, as set forth below, Foster's challenge suffers the same fate under the less-demanding *Jackson v. Virginia* standard.

Moreover, the lie clouded how Imperial (through Foster as a principal) obtained its assets. *See, e.g.*, *United States v. Wagner*, 382 F.3d 598, 608 (6th Cir. 2004) ("§ 152 is a congressional attempt to cover all of the possible methods by which a debtor . . . may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed among creditors.") (internal quotation marks and emphases omitted).

For these reasons, a rational juror could conclude Foster's false statement was material.

III.

The next issue on appeal relates to his false-tax-return convictions. Foster contends the district court impermissibly allowed an IRS agent to testify that Foster created and filed "false" tax returns as a matter of law. Having failed to object to this testimony below, we review for plain error. *United States v. Ledbetter*, 929 F.3d 338, 348 (6th Cir. 2019).

It is well settled that testimony that "embraces an ultimate issue to be decided by the trier of fact" is permissible. *United States v. Maya*, 966 F.3d 493, 505 (6th Cir. 2020) (citation omitted). Here the agent testified about defendant's business transactions and then explained why the tax returns reflecting those transactions were false—i.e., because Foster inflated gross receipts and overstated deductions. Whether something is "false" or not in this context does not require specialized legal knowledge or call for a legal conclusion. *See, e.g.*, *United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995).

Accordingly, the district court committed no error, plain or otherwise, in admitting the IRS agent's testimony.

IV.

Finally, Foster takes issue with the district court's loss calculation, which he says resulted in a procedurally unreasonable sentence and an unsupported restitution total. More specifically,

Foster's presentence report identified three victims who sustained a total loss of almost $8 million: Smith ($6,456,250); McKnight ($151,675); and the IRS ($1,365,626). Because the total loss was between $3.5 and $9.5 million, the Guidelines provided for an 18-point increase to his offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J). On appeal, Foster says the calculation as to Smith is wrong because Smith authorized a $2 million investment that was included in the loss calculation (and the restitution order).[2]

This argument, as the district court correctly recognized, belies the jury's view of the evidence supporting Foster's fraud. Whether Smith authorized the investment or not is immaterial, for Smith testified that had he known about Foster's relationship with Imperial and his commission, Smith "more than likely" would have "reconsidered" the investment. Accordingly, the district court's loss-calculation as to Smith satisfied the "reasonable estimate" standard by a preponderance of the evidence. *See United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013) (citation omitted).

The district court therefore did not improperly calculate the Guidelines range (making the sentence procedurally reasonable), *see, e.g.*, *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018), and did not abuse its discretion in calculating the restitution amount, *see, e.g.*, *United States v. White*, 492 F.3d 380, 418 (6th Cir. 2007).

V.

For these reasons, we affirm the district court's judgment.

---

[2]Foster also suggests the government conceded that he legitimately earned over $1.3 million from Smith and thus this amount should not have been included in the loss calculation. But he made no such argument to the district court on this point and the record does not appear to reflect such a "concession." Regardless, this argument does not support a plain-error finding given the presentence report's straightforward conclusion (which the district court adopted) that Smith sustained losses over $6 million.