

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2007

# USA v. Kononchuk

Precedential or Non-Precedential: Precedential

Docket No. 06-2484

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Kononchuk" (2007). *2007 Decisions.* Paper 1037.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1037

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  06-2484
_____

UNITED STATES OF AMERICA,

Appellant

v.

DMITRI I. KONONCHUK, also known as, DMITRI SMITH


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 05-cr-00045-2E)
District Judge:  Hon. Arthur J. Schwab

_____

Argued on January 29, 2007

Before: BARRY and ROTH, <u>Circuit Judges</u>
DEBEVOISE*, <u>District Judge</u>

_____

*The Honorable Dickinson R. Debevoise, United States
District  Judge, District of New Jersey, sitting by designation.

(Opinion filed: May 8, 2007)

Mary Beth Buchanan, Esquire
United States Attorney
Laura S. Irwin, Esquire **(ARGUED)**
Assistant United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

       Counsel for Appellant

Robert E. Stewart, Esquire **(ARGUED)**
Stewart, Melograne & Zinski
428 Forbes Avenue, Suite 1710
Pittsburgh, PA 15219

       Counsel for Appellee

---

**OPINION**

---

**ROTH:** Circuit Judge

In this case, the District Court imposed a sentence of probation and home confinement even though the advisory United States Sentencing Guidelines called for incarceration and specifically excluded the option of probation. The government appealed, contending that the sentence was unreasonably low. Because we conclude that the District Court failed to address

2

specific concerns and objections raised by the government at sentencing, we will vacate the sentence and remand for resentencing consistent with this opinion.

## I. **Background**

Dmitri Kononchuk is a permanent resident alien, living in the United States. He ran afoul of the criminal justice system because for three years he sold counterfeit software over the Internet. Born in Kiev, Ukraine, Kononchuk has tried many trades and endeavors. As a young man, he served in the military, obtained both a medical degree in orthopedic surgery and a masters degree in computer science, and engaged in extensive international travel. In 1997, Kononchuk permanently relocated to the United States, settling first in Pittsburgh.

At age 29, Kononchuk, with Maxim Dolgosheev (then a minor, aged 17 years), established a corporation, Inominatus Inc., and, through it, sold counterfeit versions of software for which Microsoft Corporation held the copyright. Initially, Dolgosheev did not know that the software was counterfeit. When he discovered that it was, he explained to Kononchuk that he, Dolgosheev, did not want to be a pirate. Kononchuk convinced Dolgosheev to continue with the scheme. Over a three-year period from June 1998 through July 2001, Kononchuk and Dolgosheev sold at least $265,000 in counterfeit Microsoft software. Thus, Kononchuk and Dolgosheev together

3

are responsible to Microsoft for this loss.[1]

Law enforcement officials first questioned Dolgosheev on July 17, 2001. He was cooperative from the start. He was charged by information with four counts: (1) conspiracy to engage in trademark counterfeiting and copyright infringement under 18 U.S.C. § 371; (2) trademark counterfeiting under 18 U.S.C. § 2320(a); and (3-4) two counts of copyright infringement under 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319(b)(1). He pled guilty to all four counts and agreed to cooperate against Kononchuk. Dolgosheev substantially assisted the government over a four-year period, including testifying to the grand jury against Kononchuk.

Because of Dolgosheev's cooperation, the government filed for a downward departure pursuant to §5K1.1 of the 2000 United States Sentencing Guidelines. Additionally, although the Guidelines called for incarceration, the government advocated a sentence of probation based on several factors. Dolgosheev was a minor when the criminal activity began and fell under the influence of Kononchuk, an older and more experienced person. He finished at the top of his economics section at Carnegie Mellon University and, although he lost a post-graduate job due to his illegal conduct, he cooperated fully from the beginning of the case. Based on these reasons and the government's recommendation, the District Court sentenced Dolgosheev to

---

[1]By Dolgosheev's admission, he and Kononchuk actually saw profits totaling $1.4 million. Because the government could confirm sales of only $265,000, this was the amount to which the parties stipulated for sentencing purposes.

4

five years probation and ordered him to pay $265,000 in restitution to Microsoft, jointly and severally with Kononchuk, at a rate of 20% of Dolgosheev's income.

Events unfolded quite differently for Kononchuk. In the spring of 2001, he moved to South Carolina, where he had obtained a job. Also in 2001, Kononchuk separated from his first wife. Because she would not grant him a divorce, he traveled to Haiti and obtained a divorce there in 2002. In 2003, he married a co-worker, Jane Redden, whose father, Richard Redden, was the retiring CEO of two Fortune 500 companies. This marriage significantly improved Kononchuk's financial situation. Kononchuk earned an annual salary of $50,000, and his wife earned $72,000. In addition, the couple received significant financial support from the Redden family. Kononchuk and his wife live in a home purchased and paid for in full by the Reddens. Richard Redden also has made a number of loans and gifts to Kononchuk and his wife.

On March 1, 2005, a grand jury returned an indictment against Kononchuk, containing the same four counts that were brought against Dolgosheev. Although Kononchuk initially denied his culpability and proved uncooperative, he eventually entered a guilty plea to Count One (conspiracy to engage in trademark counterfeiting and copyright infringement under 18 U.S.C. § 371), acknowledged his responsibility for the conduct charged in the remaining three counts, and agreed to pay mandatory restitution. The parties stipulated $265,000 as the amount of loss for purposes of Guidelines calculation and restitution.

After his guilty plea, Kononchuk faced a statutory maximum of five years of imprisonment, 18 U.S.C. § 371; supervised release for not more than three years, 18 U.S.C. § 3583(b)(2); mandatory restitution, 18 U.S.C. § 3663A; a maximum fine of $250,000, 18 U.S.C. § 3571(b)(3); and a mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

The presentence report, using the 2000 version of the Guidelines, applied U.S.S.G. §2B5.3 to obtain a base offense level of 8, then applied an 8-level increase based on an amount of loss more than $200,000 but less that $350,000, pursuant to §2F1.1(b)(1)(i). Kononchuk also qualified for a 2-level increase under §3B1.4 for his use of a minor under age 18 in his commission of the offense. Finally, because Kononchuk waived the indictment and pleaded guilty to an information in a timely manner, he qualified for a 3-level reduction under §3E1.1. His total offense level was 15. Given his criminal history category of I, Kononchuk's advisory Guidelines range was 18 to 24 months of imprisonment. This range fell within Zone D of the sentencing table, under which the minimum sentence to be served must include imprisonment. Thus, under the provisions of the Guidelines, a probationary sentence was not an option. U.S.S.G. §5C1.1(f). The Guidelines also advised a fine in the range of $4,000 to $40,000. U.S.S.G. §5E1.2(c)(3).

Although neither Kononchuk nor the government filed an objection to the presentence report, Kononchuk did submit a sentencing memorandum and a letter from his father-in-law. In these submissions, Kononchuk and Redden described the admirability of Kononchuk's character and his complete

6

rehabilitation from his criminal past. Sentencing took place on March 24, 2006, before the same judge who had sentenced Dolgosheev. At the sentencing hearing, Redden testified that Kononchuk was "a person of very high integrity and honesty." Redden also explained to the court that his own success in business was due in large part to his skill as a judge of character.

Throughout the hearing, the District Court focused on the repayment of restitution. Kononchuk's initial proposal was to pay 25% of his $50,000 annual salary towards restitution, but the District Court made it clear that this plan would be insufficient because it would take approximately twenty years for Microsoft to be repaid in full. Instead, the District Court suggested calling a recess during which Kononchuk could come up with "a plan that people can live with, not [a] some[-]day plan, but a real plan of how that restitution is going to be repaid." The District Court also implied that if, during that recess, Kononchuk could arrive at a satisfactory plan, he would be able to avoid imprisonment. Specifically, the District Court instructed Kononchuk that "I would like to hear not only what we are going to do on a payment plan, but what kind of other penalty, short of imprisonment, would be wise." After hearing from the government, the District Court called a recess.

After the recess, Kononchuk proposed paying restitution of approximately $53,000 a year, a figure which was higher than Kononchuk's annual salary but which would allow him to complete his payments within five years. Kononchuk's counsel speculated that his client would look for higher-paying employment and perhaps take a second job. Counsel indicated that Kononchuk would be obtaining substantial financial

7

assistance from his father-in-law. Counsel also represented that Kononchuk would be amenable to some form of electronic home monitoring.

In reply, the government emphasized the sophistication and deliberateness of Kononchuk's scheme, as well as the need for consistency in punishment between like offenders. It argued that Dolgosheev should not be considered a like offender for sentencing purposes because he had obtained a reduced sentence in recognizance of his cooperation against Kononchuk. The government objected strenuously to what it saw as the District Court's willingness to allow someone to avoid a sentence of imprisonment simply because he had the financial capability to pay restitution, while someone without such a capability would have no such option. The government also pointed out that because of Kononchuk's status as an alien, he potentially could be deported before paying complete restitution. The government argued that, by incarcerating Kononchuk, the court could at least ensure that he had served his sentence before he left the country.

The District Court then sentenced Kononchuk to serve a five-year term of probation, including twelve months of home detention. The District Court waived any fine because it found that Kononchuk lacked the ability to pay. It also ordered Kononchuk to pay $265,000 in restitution to Microsoft, jointly and severally with Dolgosheev, through monthly payments of at least $4,000, totaling minimum annual payments of $48,000, with any unpaid remainder being due in a lump sum at the end of Kononchuk's five-year probationary period. Finally, the District Court imposed a mandatory special assessment of $100.

8

The District Court expressed its belief that the sentence imposed would meet the goals of 18 U.S.C. § 3553(a)(2), quoting the language of that section:

> The Court considers the sentence imposed to be sufficient but no greater than necessary for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence; to protect the public against commission of further crimes by this Defendant; and to provide Defendant with needed and effective educational or vocational training, medical care, or other correctional treatment.

The District Court also stated that it had considered the other factors set forth in 18 U.S.C. § 3553(a):

> Other factors I've considered are those that are set forth in Title 18 United States Code, Section 3553(A) [sic], including the nature and circumstances of the offense and Defendant's history and characteristics; the kinds of sentences available to this offense; the sentencing guideline range under the advisory guidelines adopted by the United States Sentencing Commission for the category of offense and Defendant's criminal history; any applicable policy statements adopted by the Sentencing Commission; the need to avoid unwarranted sentence disparities among Defendants with similar records who have been

9

found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

In addition to reciting the factors found in § 3553(a), the District Court provided the following explanation of its decision not to follow the advisory provisions of Zone D of the Guidelines sentencing table, which exclude the option of probation for a sentence of the magnitude called for under the Guidelines:

> As to my decision not to incarcerate the Defendant, I don't see that anything is going to be gained by making him serve a period of time in prison which one could argue might be just punishment, but then produce an otherwise productive full-time worker who would then potentially be unemployable.
>
> I also think it is important that the end product of any punishment be to increase the likelihood that the individual will be a productive citizen, and probation of five years with 12 months home detention seems, in my judgment, to achieve that goal more than incarcerating him.

Earlier in the hearing, the District Court had made clear that its concern for Kononchuk's employability was based on the need for Kononchuk to pay restitution:

> Well, when you balance sentencing versus restitution, where do you come out? Because if

10

he is sentenced, he loses his employment and becomes less employable when he comes out. So you don't get your restitution at the end of the day.

Pursuant to 18 U.S.C. § 3742(b), the government timely appealed Kononchuk's sentence as unreasonably low.

## II. **Discussion**[2]

In *United States v. Booker*, the Supreme Court directed that sentences imposed by federal district courts shall be reviewed for "reasonableness." 543 U.S. 220, 261-62 (2005). To determine if the District Court acted reasonably in imposing a sentence, we must be satisfied that the court appropriately exercised its discretion by considering the relevant factors under 18 U.S.C. § 3553(a).[3] *United States v. Cooper*, 437 F.3d 324,

---

[2]The District Court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231 because an indictment charged Kononchuk with violations of federal criminal law. We have jurisdiction over the Government's appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[3]Under § 3553(a), a District Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the

history and characteristics of the defendant;

(2) the need for the sentence imposed-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . and . . . that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [sic]

12

329 (3d Cir. 2006). The record must demonstrate that the district court gave "meaningful consideration" to the § 3553(a) factors. *See id.*

Although the district court need not discuss and make findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing, a rote statement of the § 3553(a) factors "should not suffice if at sentencing either the defendant or the prosecution properly raises a ground of recognized legal merit (provided it has a factual basis) and the court fails to address it." *Id.* (internal quotation marks omitted). In addition, we have made clear that "significant" variances from the advisory Guidelines range must be "adequately supported by the record." *United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006).

Thus, when the district court imposes a sentence that varies significantly from the advisory Guidelines range and a party has made objections with legal merit that the variance is unjustified by the record, the district court has an obligation to explain why the variance is justified. After cogent objections have been raised, the explanations of the relevant sentencing factors must go beyond mere formalism. Otherwise, it is

---

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

13

difficult for us to apply effective appellate oversight. *See United States v. Grier*, 475 F.3d 556, 572 (3d Cir. 2007) (en banc).

There are several reasons for the need for this fuller explanation. First, when the variance is large, the reviewing court needs to hear a coherent articulation of the District Court's reasoning. *Cf. Cooper*, 437 F.3d at 329 ("[T]here is no way to review [a court's] exercise of discretion if it does not articulate the reasons underlying its decision" (quoting, in part, *United States v. Johnson*, 388 F.3d 96, 101 (3d Cir. 2004)) (quotation marks omitted and second alteration in original)). Second, when the objections have legal merit, the considerations countervailing the district court's judgment are significant and worthy of response. *See United States v. Wallace*, 458 F.3d 606, 614 (7th Cir. 2006) ("The district court acknowledged that it was giving [the defendant] a significant break – a 'World Series' break, in fact. Such a break requires, we hold, a 'World Series' explanation.").

The District Court granted Kononchuk a remarkably favorable variance, to which the government objected strenuously as unsupported by the factors of § 3553(a). More specifically, the District Court imposed a sentence of probation and home arrest, even though the Guidelines called for incarceration without the option of probation[4] and even though

---

[4]Under *Booker*, the Guidelines' disallowance of the option of probation is, of course, merely advisory. We do not decide today how much weight a court must give to this "advisory prohibition." All we suggest is that, under § 3553(a)(4), the position taken by the Guidelines does have some weight.

14

the government emphasized the sophistication and deliberateness of Kononchuk's scheme, the need for consistency in punishment between like offenders, and the dissimilarities between Kononchuk and Dolgosheev. The government also noted the unfairness of allowing Kononchuk to avoid incarceration because of his financial capability to pay restitution and it cited Kononchuk's status as an alien, who could be subject to deportation before the completion of restitution. These arguments were relevant and cogent.

Following the government's objections, the District Court was obliged to explain why a significant variance was warranted under § 3553(a) in light of the concerns raised by the government. It did not do so. Beyond its entirely rote recitation of the § 3553(a) factors, the District Court focused its explanation exclusively on the need for Kononchuk to remain productive and employable and the need for Kononchuk to maintain the financial capacity to pay restitution to Microsoft. Regardless of whether and to what extent these considerations are valid under § 3553(a), it should be clear that the District Court's explanation was insufficiently responsive to the government's objections. The District Court did not explain what warranted the disparity in treatment between Kononchuk and other defendants convicted under 18 U.S.C. § 371 who are imprisoned consistent with the Guidelines. It did not explain why Kononchuk and Dolgosheev – two defendants who were not similarly situated – should receive similar sentences.[5]

_____

[5]The imposition of home detention for one defendant but not the other is, of course, a difference. Where, however, the defendant in question receives an enhancement for involving a

15

The court essentially conceded that it was subordinating the goal of just punishment (§ 3553(a)(2)(A)) to the goal of keeping Kononchuk employable, but it did not explain how such a subordination was justified in light of Kononchuk's obvious deliberateness as an offender and his decision to ensnare a minor in the offense. The court did not respond to the government's concern that, as an alien offender, Kononchuk might be deported before paying his restitution in full. Even when the District Court expressed its concerns regarding Kononchuk's employability, it said nothing at all about Kononchuk as an individual offender.[6]

Finally, we fail to see the trade-off between incarceration and restitution which motivated the District Court. The court sentenced Kononchuk to pay restitution at an amount set roughly equal to his income. Looking at the financial information which was before the court, it would have been

minor, and that enhancement puts the defendant in a sentencing range in which probation is not even an option, a difference of twelve months home detention between that defendant and the minor he involved is modest, to say the least. The government suggested as much at sentencing, and the District Court failed to address this concern.

[6]The concern with employment prospects is universal among defendants; a term of incarceration is rarely, if ever, a favorable addition to one's resumé. The District Court did not identify any reason why Kononchuk's employability should be of greater concern to a sentencing court than should the employability of any other defendant.

impossible for Kononchuk to pay both restitution and living expenses. All parties understood that the funds for these payments would come largely from the Redden family; indeed, Kononchuk stated at his sentencing hearing that they would. As a result, it appears that Kononchuk's ability to pay restitution is more dependent on the generosity of the Reddens than on his own ability to maintain gainful employment. It is conceivable that in some circumstances — where, for example, a defendant has caused serious loss to a particularly vulnerable victim, the need for restitution would be great enough to subordinate certain penal interests.[7] The District Court has, however, identified no such circumstances here. Given that fact, and in light of the source of Kononchuk's restitution payments, we see no reason to favor the restitution aspect of punishment over the incarceration aspect.

The District Court ignored the valid concerns raised by the government and imposed an extraordinarily lenient sentence. If there is a way to find this sentence reasonable in light of the § 3553(a) factors, the District Court did not articulate it. Due to this failure of articulation, we cannot be satisfied that the

---

[7]Since *Booker*, several courts of appeals have considered whether the facilitation of restitution can be grounds for a variance. These courts determined that it may, but only under extraordinary circumstances. *See United States v. Repking*, 467 F.3d 1091, 1096 (7th Cir. 2006); *United States v. Crisp*, 454 F.3d 1285, 1291-92 (11th Cir. 2006). We express no view as to what circumstances justify a reduction in sentence to facilitate payment of restitution, except to note that the District Court has identified no such circumstances in this case.

17

District Court gave "meaningful consideration" to the § 3553(a) factors. *See Cooper*, 437 F.3d at 329. We will therefore vacate the sentence and remand this case for resentencing.

## III. Conclusion

The District Court failed to respond to the government's concerns and objections, raised at sentencing. This constituted an inadequate explanation of the § 3553(a) factors. For that reason, we will vacate Kononchuk's sentence and remand for resentencing.

18