NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2960
_____

UNITED STATES OF AMERICA

v.

BRIAN ELSTON,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-09-cr-00091-001)
District Judge:  Honorable James Knoll Gardner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2011

Before:  FISHER, JORDAN and COWEN, *Circuit Judges*.

(Opinion Filed: April 13, 2011 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Brian Elston pleaded guilty to one count of possession of child pornography, in

violation of 18 U.S.C. § 2252(a)(4)(B), and the United States District Court for the

Eastern District of Pennsylvania sentenced him to 78 months' imprisonment and 25

years' supervised release.  Elston now appeals, arguing that the District Court erred in

failing to consider his argument that the child-pornography guideline is unreasonable. For the following reasons, we will affirm the District Court.

## I.

We write for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Pennsylvania State Police discovered Elston sharing child pornography on a "peer to peer" computer network. A search of Elston's home revealed over 250 video files and 1,900 images of child pornography. Elston was arrested and later pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

The Probation Office calculated Elston's advisory guideline range. Pursuant to U.S.S.G. § 2G2.2(a)(1), the base offense level was calculated to be 18. Two levels were added pursuant to § 2G2.2(b)(2) because the pornographic material involved prepubescent minors, and four additional levels were added pursuant to § 2G2.2(b)(4) because the images involved sadomasochism perpetrated on children. Two additional levels were added pursuant to § 2G2.2(b)(6) because Elston used a computer for possession, transmission, receipt, or distribution. Finally, there was a five-level increase pursuant to § 2G2.2(b)(7)(D) because the offense involved more than 600 images. Elston received a three-level reduction because of acceptance of responsibility, resulting in a total offense level of 28. He had a criminal history category of I, yielding a guideline range of 78 to 97 months.

Elston requested a downward variance based on a history of mental health issues, drug use, childhood trauma and sexual abuse, his low risk of recidivism, and the empirically unsound nature of the child pornography guideline. He presented a report and testimony from a psychiatrist who stated that Elston was a low risk for recidivism and was not a danger to the public. Elston also argued that the child pornography guideline is unduly severe. He claimed that U.S.S.G. § 2G2.2 is not the product of the Sentencing Commission's traditional empirical approach but was adopted at the direction of Congress. In support of his argument, Elston submitted an article: Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.*

The Court stated that it reviewed all of the evidence presented before making its determination to impose a sentence:

> I have reviewed a number of voluminous materials in connection with this difficult case very closely and carefully reading and in some instances, rereading and rereading the Government's sentencing memorandum, all of the exhibits to the defense sentencing memorandum with the exception of Exhibit A, a lengthy article dated January 1, 2009 by an author named Troy Stabenow . . . entitled "Deconstructing The Myth of Careful Study: A Primer" . . . .
>
> I reviewed the table of contents in that article and I reviewed the charts and some of the charts and graphs in that article, but I only glanced at the – in a cursory fashion at the writing itself of that 38 page article, but the rest of the defense exhibits I have reviewed and read very carefully.

3

(App. at 303.) The Court considered Elston's request for a downward variance but ultimately concluded that he had committed a serious offense. Elston was sentenced to 78 months' imprisonment, and he filed a timely appeal.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over Elston's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Our decision in *United States v. Gunter* requires district courts to follow a three-step sentencing procedure:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before [*United State v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005)].
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre- *Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant [18 U.S.C. ]§ 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

462 F.3d 237, 247 (3d Cir. 2006) (internal citations, quotation marks, and brackets omitted). It is undisputed that the District Court complied with steps one and two. The parties disagree as to whether the Court complied with step three.

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 522 U.S. 38, 51 (2007). Claims of procedural error

4

are subject to plenary review. *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). Elston argues that the District Court did not consider one of his arguments for a lower sentence. A district court's "fail[ure] to consider the §3553(a) factors" can create a procedurally unreasonable sentence. *Id.* at 195 (quoting *Gall*, 552 U.S. at 51). We review whether the Court gave "meaningful consideration to the § 3553(a) factors." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

III.

Elston does not challenge the substantive reasonableness of his sentence but claims that the District Court committed a procedural error in failing to consider the argument that § 2G2.2 is unreasonable because it is not empirically based. But in support of his argument, Elston cites a statement by the District Court that it merely did not read the entire 38-page article submitted by Elston. In fact, the District Court stated that it thoroughly considered every argument presented by Elston in his defense memorandum, which included the argument that § 2G2.2 is empirically flawed. We need not base our decision upon such a finding, however. For even if the District Court did not consider Elston's argument for a variance based on the empirical soundness of § 2G2.2, we must affirm his sentence.

We have made clear that a district court is not required to conduct an investigation of an empirical challenge to the Sentencing Guidelines. "[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative

5

undertakings that led to a particular Guideline." *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3d Cir. 2009) (internal citations omitted). It certainly remains true that defendants are permitted to make such policy-based arguments and that district courts may make variances based on them. *See Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Grober*, 624 F.3d 592, 609 (3d Cir. 2010) (holding that district courts have discretion to vary from the child pornography guideline on the ground that it is flawed). But this discretion in no way means that district courts are under an obligation to investigate and consider the empirical underpinnings of the Guidelines every time such an argument is raised. "*Kimbrough* does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines." *Lopez-Reyes*, 589 F.3d at 671 (quoting *United States v. Duarte*, 569 F.3d 528, 530 (5th Cir. 2009)). It may be the case that district courts find the child pornography guideline to be flawed in particular cases and vary for this reason. But "[w]e emphasize that we do not hold that § 2G2.2 will always recommend an unreasonable sentence, and district courts must, of course, continue to consider the applicable Guideline range." *Grober*, 624 F.3d at 609. In other words, district courts have the discretion but not the obligation to consider variances based on arguments that the Guidelines are empirically flawed.

The record indicates that the District Court heard and considered arguments from defense counsel and weighed the § 3553(a) factors in making its decision. Elston argues

6

that district courts are under an obligation to "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Ausburn*, 502 F.3d 313, 328-29 (3d Cir. 2007). But, at the same time, the court "need not discuss and make findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing." *United States v. Kononchuk*, 485 F.3d 199, 204 (3d Cir. 2007). All that we require is that "[t]he sentencing judge . . . set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). In its thorough analysis of the § 3553(a) factors, consisting of a point-by-point consideration of the psychiatrist's testimony and a review of the defendant's request for a variance, the District Court satisfied this requirement.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.