**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1780
_____

UNITED STATES OF AMERICA,
Appellant

v.

STEVEN NEWKIRK
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cr-00623-001)
District Judge: Honorable Brian R. Martinotti
_____

Argued March 11, 2026

Before: HARDIMAN, KRAUSE, and MASCOTT,
Circuit Judges

(Filed: May 1, 2026)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Steven Newkirk entered an open guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Based on his offense level of 26 and his criminal history category of IV, the United States Sentencing Guidelines advised 92 to 115 months' incarceration. The District Court sentenced Newkirk to time served, which was just shy of two weeks.

The Government filed this appeal, arguing that Newkirk's sentence was procedurally and substantively unreasonable. Because we agree with the Government on both points, we will vacate and remand for resentencing consistent with this opinion.

I

Newkirk was a target in a drug investigation and the Government obtained a warrant to search his apartment. The affidavit supporting the warrant mentioned drug sales there, including a March 2019 controlled purchase by a confidential informant who reported that Newkirk was inside his apartment with a "black handgun sitting on the table next to [him]." Supp. App. 16.

While executing the search warrant, officers noticed a safe in Newkirk's bedroom. Inside, they found a firearm loaded with 13 rounds of hollow-point ammunition, several loose rounds of ammunition, and numerous empty glassine envelopes. The firearm had been reported stolen in Georgia the year before. Officers also recovered three glass jars containing marijuana, paperwork bearing Newkirk's name, a cell phone,

2

and $2,970 in cash. Elsewhere in the apartment, officers discovered 110 grams of marijuana, another cell phone, 90 glassine envelopes of heroin, two boxes of unused stamped glassine envelopes, a digital scale, and other drug paraphernalia.

The State of New Jersey charged Newkirk with 16 counts, including various firearm and drug offenses. He spent about two weeks in state custody from April 17–29, 2019. The United States then charged Newkirk with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He was arrested on the federal charge on April 29 and released the next day on an unsecured bond.

Upon release, the District Court placed Newkirk on home confinement. Over a year later, in August 2020, the Court relaxed Newkirk's conditions to home detention to allow him to find work. In January 2022, the Court further relaxed Newkirk's conditions, placing him under a curfew. While Newkirk was on pretrial release between 2019 and 2024, he tested positive for marijuana 15 times, alcohol once, and benzodiazepine once. He submitted diluted urine four times, which also tested positive for marijuana. During this time, Newkirk completed mental health and substance abuse programs.

Before trial, the Government turned over recordings of jailhouse calls Newkirk made while in state custody. In one, Newkirk told his girlfriend: "I had my fucking gun in my safe, ok?" App. 217. Later, however, Newkirk claimed through counsel that he actually said, "I didn't have *no* gun in my safe," and alleged that the Government altered the recording. App. 23 (emphasis added). Over the ensuing months, he leveled similar accusations and went so far as to move into evidence an expert

3

opinion that the recordings had been altered. The District Court denied Newkirk's various motions because his claim was "speculative" and would not "help[] the jury." App. 91–92. Eventually, after the recording was played in open court, Newkirk's counsel admitted she was wrong: "I must have misheard it" and "I want to apologize to the [G]overnment." App. 301.

Just days before trial, Newkirk entered an open guilty plea. While doing so, Newkirk did not allocute that the loaded firearm was his or that it was found in his bedroom. Instead, he admitted only that he had constructive possession over a firearm that he knew was in the apartment.

Recall that Newkirk's advisory Guidelines range was 92 to 115 months' imprisonment. That range reflected that Newkirk was previously convicted of three drug-distribution offenses, two of which involved selling drugs near schools. It also reflected that Newkirk did not fully accept responsibility for his current offense, and that his firearm was stolen.

In its sentencing memorandum, the Government asked for 92 months' imprisonment. For his part, Newkirk requested "probation, with conditions such as community service or placement in a halfway house." App. 146. Alternatively, he requested at most 40 months' imprisonment, and later 36 months' imprisonment. Newkirk's counsel again claimed that the firearm was not his: "[t]he gun was taken to Mr. Newkirk's room and photographed in his safe." App. 229. Newkirk also challenged the Government's claim that he was a gang member, an assertion the Government based on Newkirk's tattoos and his statements during an intake interview. Newkirk later backtracked, claiming his interview statements had been "a bit of an exaggeration." App. 232.

4

The sentencing hearing finally took place on January 23, 2025, almost six years after Newkirk's arrest. There, the District Court referenced the many "positive testimonials" it received about Newkirk and noted that his work owning and running Gloves Up Gunz Down, a business and nonprofit organization that promotes boxing events as a solution to gang violence, was "laudable." App. 264. Still, the Court agreed that the Probation Office had correctly calculated the Guidelines range and that Newkirk was not entitled to a two-point acceptance-of-responsibility reduction. The Court was "disquieted" by Newkirk's repeated suggestion that the firearm had been planted by law enforcement, stating: "I do not find any credibility in that." App. 266. Newkirk's recorded jail call, the Court said, "clearly, in my opinion, indicates that this was the defendant's gun." *Id*.

Urging the District Court to vary downward from his Guidelines range, Newkirk's counsel stressed his involvement with Gloves Up Gunz Down and his support from family and friends. Counsel highlighted that Gloves Up Gunz Down promotes boxing as a nonviolent way for gangs to resolve their differences, and that Newkirk often speaks to young people in his community about how to avoid his past mistakes. She also pointed out that the organization generates revenue from tickets and sponsorships, and has donated money to fund college scholarships for neighborhood youth. In 2023, for instance, Gloves Up Gunz Down gave $5,000 college scholarships to two high school seniors.

The District Court next heard from Newkirk's supporters. Newkirk's younger sister, an Army veteran, testified that Newkirk "never gave up on me," has "grown tremendously," and is "generous, reliable, [and] trustworthy again." App. 281–82. The cofounder of Gloves Up Gunz Down

5

testified that Newkirk is a "real good-hearted individual," a "[g]reat dad," and a "[r]eal motivator" who does "the right thing" even when he is "not being watched." App. 283. It was Newkirk's idea "to give back scholarships to the community." App. 282. Newkirk's cousin explained that Gloves Up Gunz Down "put[s] on events that push peace on a wide scale"; Newkirk has "created an actual business out of this"; and "we need him out here" "pushing what he's doing." App. 286–87. A young man from his community testified that Newkirk is a "mentor" to him and that "he is reliable" and "a good support system." App. 289. And Newkirk's older brother testified that Newkirk kept him from "going back to prison" and that he does not want his "kids to be deprived of always being able to talk to Uncle Steven," whom they "love." App. 292.

Newkirk himself addressed the District Court. Though he admitted that he said he had a firearm in his safe during the recorded call ("Yes, those are my words."), he continued to claim that "it wasn't [his] gun." App. 297. Newkirk also explained that "[t]his prison sentence will never teach me the things that I've learned while I was on [pretrial release], because I got to see the frustration of my son." App. 297–98. Newkirk testified that he was "not asking" the Court "to let me go scot[]-free, even though I would love that." App. 299.

For its part, the Government again requested 92 months' imprisonment, focusing on the seriousness of Newkirk's offense, his refusal to accept responsibility, his previous gang membership, and his unfounded allegations of police misconduct. After Newkirk's counsel apologized to the Government "for in any way implying that any evidence [had been] altered," App. 301, the District Court adjourned the hearing. As the Court explained, "rather than just imposing a sentence now, I want to reflect on what happened in this

6

courtroom this morning because, candidly, it's a little different than it was when I walked out." App. 302.

Two months later, the District Court reconvened the hearing and imposed the sentence. The Court remarked that after "23 years, this is certainly one of the most challenging issues that I have been presented with." App. 305. After summarizing the initial hearing, the Court then turned to the sentencing factors set forth in 18 U.S.C. § 3553(a). The Court explained that this was a "serious offense," because "[g]uns in society cause untold consequences" and "there need[] to be consequences for [unlawfully] possessing a weapon." App. 307–08. The Court also acknowledged that it was "looking at a defendant who had a very, very difficult upbringing, who was thrust in an environment of gang-related activity, [and] who was a recidivist as far as criminal conduct." App. 308. And the Court noted Newkirk's "significant" and "troubling" criminal history. App. 308–09. But it also observed that it was "looking at a defendant who has for the past five years," *i.e.*, while on pretrial release, "been upstanding, has not strayed aside for some positive testing, has turned his life around, has given back to his community, [and was] committed to his family . . . [and] to his child." App. 308. The Court commented that "this case ha[d] lingered" due to the COVID-19 pandemic, pretrial motions, and the difficulty of finding a trial date before Newkirk pleaded guilty, but "during that entire time, aside from a few hiccups, he ha[d] remained compliant with his conditions" and that "his conduct while on pretrial release [was] exemplary." App. 309–10. So the Court was "relatively confident that the defendant who is sitting before me now is not the same person who has that criminal history and has shown this Court that he is committed to moving on." App. 309.

The District Court then delved into the essential facts of Newkirk's offense: "law enforcement recovered a large safe in [Newkirk's] bedroom containing a stolen firearm loaded with 13 rounds of ammunition and numerous empty glassine envelopes." App. 311. It discussed Newkirk's upbringing, childcare responsibilities, work in the community, and tragedies he endured, including the death of his daughter. The Court noted that Gloves Up Gunz Down "has provided scholarships to individuals; some of whom have written letters and one of whom came into court." App. 312. Though Newkirk, through counsel, had, in fact, requested probation in his sentencing memorandum, the Court stated "what really motivated" the sentence was that Newkirk "didn't ask to go scot-free" and his "lawyer didn't ask this Court to not put [Newkirk] in prison." App. 313–14.

Following that explanation, the District Court imposed a sentence of "time served," App. 313, which was about 14 days. According to the Court, "to put [Newkirk] in prison for one year or two years or three years or 96 months, in my opinion . . . unwinds everything." App. 314. The Government objected to the sentence and the Court's explanation before filing this timely appeal.

II[1]

Although the Guidelines are advisory and "there is no mandatory script for sentencing," *United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007), a district court must follow a

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291.

8

three-step sentencing process, *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010). The court must first "correctly calculate the defendant's Guidelines range." *Id.* Next, the court "must rule on any motions for departures." *Id.* Finally, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate," the court must "exercise its discretion" with "meaningful consideration" of the sentencing factors in § 3553(a). *Id.* (citation modified).

Our review of a criminal sentence "proceeds in two stages." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). We first review for procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* (quoting *Gall v. United States,* 552 U.S. 38, 51 (2007)). If we find procedural error, we usually "remand the case for re-sentencing, without going any further." *Merced,* 603 F.3d at 214. At the second step, we consider whether the sentence fails to achieve the purposes stated in § 3553(a), such that, all things considered, "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko,* 562 F.3d at 567–68. The party who challenges a sentence has the burden to demonstrate its unreasonableness. *Id.* at 567. Because the Government objected at sentencing to the procedural and substantive reasonableness of Newkirk's sentence, we review for abuse of discretion. *United States v. Jackson*, 132 F.4th 266, 272 (3d Cir. 2025).

9

A

The District Court's sentence was procedurally unreasonable in two ways. First, the Court did not adequately consider two § 3553(a) sentencing factors: (1) the risk of unwarranted sentencing disparities; and (2) general deterrence. *See* 18 U.S.C. § 3553(a)(2)(B), (6). Courts must have "sufficient justifications on the record to support the sentencing conclusions." *Tomko*, 562 F.3d at 567 (citation modified). And "[w]here one party raises a colorable argument about the applicability of one of the factors," as here, "the court should respond to that argument as part of its meaningful consideration of the relevant statutory factors and the exercise of independent judgment." *Merced*, 603 F.3d at 222 (citation modified). A court's "failure to do so in the face of a colorable argument that an outside-the-Guidelines sentence will create a risk of such disparities constitutes procedural error." *Id*. And a court's failure to "adequately address the impact its sentence would have on the deterrence of similar criminal conduct" is also procedural error. *Goff*, 501 F.3d at 256.

On this record, "[n]othing . . . indicates that the District Court considered [the need to avoid unwarranted sentencing disparities] at all, despite the [G]overnment's emphasis on that argument in its sentencing memorandum and the risk of disparities that [Newkirk's 14-day] sentence undoubtedly created." *Merced*, 603 F.3d at 224. Consider that a hypothetical defendant also convicted under § 922(g)(1), with an offense level of 14 and a criminal history category of I, would have an advisory Guidelines range of 15 to 21 months' imprisonment. *See* U.S.S.G. § 2K2.1(a)(6); U.S.S.G. ch. 5, pt. A. That range stands in stark contrast to Newkirk's advisory range of 92 to 115 months, given his offense level of 26 and his criminal history category of IV. Yet Newkirk was sentenced to about

10

two weeks' imprisonment, a more than 91-month downward variance 99.5 percent below the recommended range.

Nor does the record show that the District Court properly considered general deterrence. The Government argued that a bottom-of-the-Guidelines sentence of 92 months' imprisonment would promote general deterrence. At sentencing, the District Court acknowledged that "there need[] to be consequences for [unlawfully] possessing a weapon." App. 308. Yet it mentioned general deterrence only in passing and never explained how Newkirk's 14-day sentence would "send a message that this type of behavior will not be tolerated in our society." App. 308.

To be sure, courts are not required to "specifically discuss each of the sentencing factors in every case." *Merced*, 603 F.3d at 222. But where, as here, "the sentence imposed is 'far below the sentences given to similar offenders,' the risk of disparities should be analyzed with 'particular care.'" *Id.* (quoting *United States v. Lychock*, 578 F.3d 214, 219 (3d Cir. 2009)); *see also Goff*, 501 F.3d at 256 (same). And under these circumstances, the District Court's perfunctory mention of the need to afford adequate deterrence and avoid unwarranted sentence disparities was simply not enough: the Court recited those factors along with several others but offered no further discussion. *See United States v. Jumper*, 74 F.4th 107, 114 (3d Cir. 2023) (listing as examples of procedural unreasonableness "gloss[ing] over the Section 3553(a) factors" and "inadequately explain[ing] the chosen sentence" (citation omitted)). Even after the Government raised these two deficiencies at the conclusion of the hearing, the District Court offered no additional explanation for its sentence. The Court's "failure to do so was procedural error." *Merced*, 603 F.3d at 225; *see also United States v. Negroni*, 638 F.3d 434, 446 (3d

11

Cir. 2011) ("While the District Court identified the concern and stated it had considered [the need to avoid unwarranted sentencing disparities], it provided no explanation for why the sentence it imposed was justified despite the clear disparity it seemed to create.").

Second, the District Court's sentence was procedurally unreasonable because it failed to provide sufficient justification for its substantial downward variance. "After settling on the appropriate sentence" and "carefully analyz[ing] the sentencing factors," a court "must adequately explain the chosen sentence to allow for meaningful appellate review." *Merced*, 603 F.3d at 215 (quoting *Gall*, 552 U.S. at 50). Sometimes a "brief" explanation is sufficient, most often "when a judge decides simply to apply the Guidelines to a particular case." *Rita v. United States*, 551 U.S. 338, 356 (2007). But if the court, as here, "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. And "[t]he farther a sentence varies from the advisory Guidelines range, the more compelling the judge's reasons must be." *United States v. Ausburn*, 502 F.3d 313, 331 n.36 (3d Cir. 2007) (citation modified). So a large variance from the Guidelines range must be supported by a "fuller explanation." *United States v. Kononchuk*, 485 F.3d 199, 204 (3d Cir. 2007); *see also Merced*, 603 F.3d at 216 ("The extent of the explanation we require of the district court may turn on whether the court has varied from the Guidelines range, and, if it has, on the magnitude of the variance."); *cf. Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

Here, the variance was "genuinely extraordinary," *Negroni*, 638 F.3d at 446, and even the District Court remarked that it was "out on a limb to the extent that this is a substantial variance," App. 313. Indeed, the sentence imposed was more than 91 months and 99.5 percent below the bottom of the applicable Guidelines range. Yet the District Court did not provide a "sufficiently compelling" reason to justify such leniency. *Gall*, 552 U.S. at 50; *see also Negroni*, 638 F.3d at 446 (vacating a sentence where the Guidelines range was 70 to 87 months' imprisonment and the district court had imposed 60 months' probation, noting that such a variance "should have been accompanied by a thorough justification of the sentence"). Rather, it placed nearly exclusive focus on Newkirk's presentencing rehabilitation. Because the District Court's "explanation focused on the defendant's own . . . rehabilitation to the exclusion of other important sentencing factors," its "explanation is incomplete, and hence inadequate, to justify the extent of the variance imposed." *United States v. Crespo-Rios*, 787 F.3d 34, 38–39 (1st Cir. 2015).

In defense of his sentence, Newkirk argues that "the District Court made clear that it considered every relevant factor." Newkirk Br. 18. But "the explanations of the relevant sentencing factors must go beyond mere formalism," *Kononchuk*, 485 F.3d at 204, especially where the sentence varies so significantly from the Guidelines range. *See Merced*, 603 F.3d at 224–25; *see also United States v. Begin*, 696 F.3d 405, 414 (3d Cir. 2012) ("This rote recitation of § 3553(a)(6) is insufficient to permit us to review the Court's resolution of [the defendant]'s disparity arguments."). In any case, Newkirk's history and characteristics "cannot be seen in a vacuum and must be balanced against the other applicable

13

§ 3553(a) factors," which the District Court did not do here. *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014).[2]

Newkirk also defends the procedural reasonableness of his sentence by claiming that the District Court considered his "sixty-six months of [pretrial] supervision." Newkirk Br. 16. But it is unclear what significance that has for procedural reasonableness determinations, and, in any event, the Court never specifically discussed the length and terms of Newkirk's pretrial release. *See Ausburn*, 502 F.3d at 331 (declining to "fill in the gaps" or make inferences about what the district court may or may not have thought when imposing a sentence). The District Court did refer generally to the pretrial delay caused by the COVID-19 pandemic, but whatever the delay, the District Court granted a 91.5-month variance and imposed a sentence of about two weeks' imprisonment without adequately discussing general deterrence or unwarranted sentencing disparities, and without adequately explaining why

---

[2] *See also, e.g.*, *United States v. Vázquez Narvaez*, 134 F.4th 23, 29 (1st Cir. 2025) (vacating a sentence where "the district court focused almost exclusively on [the defendant's] efforts at cooperation and rehabilitation following his arrest"); *United States v. Thompson*, 130 F.4th 1158, 1166 (9th Cir. 2025) (vacating a sentence and explaining a defendant's "personal background and characteristics are, of course, proper considerations at sentencing but they may not be the sole basis for the chosen sentence"); *United States v. Fitzpatrick*, 126 F.4th 348, 353–55 (4th Cir. 2025) (vacating a sentence where "the district court focused almost exclusively on [the defendant's] personal history and characteristics").

Newkirk deserved such an extraordinary downward variance. That was procedural error.

B

Although we usually remand for resentencing after identifying a procedural error "without considering the substantive reasonableness of the sentence imposed," *United States v. Jackson*, 862 F.3d 365, 394 (3d Cir. 2017), we may address substantive unreasonableness when a district court abused its discretion in imposing the underlying sentence. *See, e.g.*, *id.* at 393–94 (concluding the sentence was both procedurally and substantively deficient); *Lychock*, 578 F.3d at 219–20 (same). In some cases, like this one, "a discussion of procedural error will necessarily raise questions about the substantive reasonableness of a sentence." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). In such cases, discussing both "ensure[s] that a substantively reasonable sentence has been imposed in a procedurally fair way." *Id.* It also serves the interests of judicial economy because the two errors can be intertwined: procedural unreasonableness often begets substantive unreasonableness. *See, e.g.*, *Merced*, 603 F.3d at 215 ("These procedural requirements exist to guide the district court's exercise of discretion, and failure to observe them may lead a court to impose a substantively unreasonable sentence." (citation modified)); *Goff*, 501 F.3d at 256 (substantively unreasonable sentence was "a product of the [d]istrict [c]ourt's procedurally flawed approach"); *Lychock*, 578 F.3d at 220 (similar). And when "no reasonable sentencing court [could] have imposed the same sentence on [the] particular defendant for the reasons the district court provided," the sentence is substantively deficient. *Tomko*, 562 F.3d at 568. That was the case here.

The weight the District Court placed on the first § 3553(a) factor—the nature and circumstances of Newkirk's offense and his history and characteristics—cannot support its sentence. Newkirk possessed the firearm after he was previously convicted of three drug-distribution offenses, two of which involved selling drugs near schools. Newkirk also had more recent convictions for disorderly conduct and prowling to obtain or sell drugs. Though the Court recognized that Newkirk was a "recidivist" with a "significant criminal history," App. 308, its sentence did not reflect that reality.

As for the current offense, the firearm was stolen, which increased Newkirk's offense level. And though it did not add to his offense level, the firearm was loaded with 13 rounds of hollow-point ammunition, which are "designed to expand on contact and cause aggravated wounds." *United States v. Philiposian*, 267 F.3d 214, 215 (3d Cir. 2001). This fact supports a longer sentence, not a shorter one. Recall also that Newkirk's apartment was searched because he was the target of a drug trafficking investigation, which placed him in his apartment with a firearm during a drug sale. To repeat the obvious: "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993); *see also* U.S.S.G. § 2D1.1 cmt. n.11(A) (acknowledging an "increased danger of violence when drug traffickers possess weapons"). Simply put, "[t]he District Court should have given significantly greater weight to the seriousness of [Newkirk's] offense." *Goff*, 501 F.3d at 260.

It is also significant that Newkirk failed to accept responsibility for his offense. At various points, Newkirk impugned the recording in which he admitted his firearm was in his safe and suggested the firearm may have been tampered with or moved by law enforcement. The District Court

16

acknowledged that these assertions lacked "any credibility" and were "disquiet[ing]," and that, "in [the Court's] opinion, . . . this was the defendant's gun." App. 266. Yet Newkirk continued to maintain as late as the sentencing hearing that "it wasn't [his] gun." App. 297. As with his criminal history and the nature and circumstances of his offense, Newkirk's failure to accept responsibility counsels in favor of a higher sentence, not a downward variance—let alone one of this extraordinary magnitude.

The District Court's rationale for its downward variance focused almost exclusively on Newkirk's presentence rehabilitation. But the "emphasis on [Newkirk's] personal life" was so strong as to render meaningless the other aspects of the case. *Goff*, 501 F.3d at 260. "Congress has instructed the Sentencing Commission to 'assure that the [G]uidelines and policy statements, in recommending a term of imprisonment . . . reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.'" *United States v. Boucher*, 937 F.3d 702, 711 (6th Cir. 2019) (quoting 28 U.S.C. § 994(e)). Although sentencing courts may consider those factors in certain cases, *see Goff*, 501 F.3d at 261 n.16, the District Court extrapolated from Newkirk's personal background that his offense is dramatically different from other gun possession cases. It is not.

Contrary to the District Court's characterization, Newkirk's "conduct while on pretrial release" was not "exemplary." App. 310. The District Court referred to a "few hiccups," App. 309, but Newkirk's noncompliance was far more serious: over a period spanning nearly all five years of his pretrial release, Newkirk tested positive for marijuana 15

17

times and submitted diluted urine four times (which also later tested positive for marijuana). And he tested positive for alcohol once and benzodiazepine once.[3] But even if Newkirk had committed no violations, "defendants are *expected* to comply with the conditions of their release—that is, such conduct is not outside the norm," so compliance alone cannot support a large downward variance. *United States v. Vázquez Narvaez*, 134 F.4th 23, 31 (1st Cir. 2025) (emphasis added). None of that diminishes Newkirk's recent dedication to his son and his community, both of which are commendable. But while leading an avowed anti-violence organization and parenting his son, Newkirk also conducted a drug deal in his apartment while armed with a firearm, and was then arrested in this case when the loaded firearm and drugs were found in his bedroom and apartment. So Newkirk is not the "role model" the Court imagined him to be. App. 306.

The District Court's other reasons for its variance are equally unpersuasive. The Court explained that it was "really motivated" by the fact that neither Newkirk nor his counsel "ask[ed] this Court to not put [him] in prison." App. 313–14. Even if that reason could be valid in some cases, it was not true here. In both his sentencing memorandum and reply, Newkirk requested probation, a non-carceral sentence. The Court agreed, suggesting that even "one day" in prison would "unwind[] all" that Newkirk had achieved. App. 314. But the Court's 99.5 percent downward variance from the bottom of the applicable Guidelines range provided little punishment and

---

[3] Newkirk concedes that "on occasion" he failed to comply with his supervision requirements. Newkirk Br. 2 n.1. According to his counsel, his marijuana use was medical and he had a benzodiazepine prescription.

18

created a significant sentencing disparity, which undercut the interest in uniform sentencing practices and the perception of fair sentencing. *See* 18 U.S.C. § 3553(a).

Finally, Newkirk argues that the length of his pretrial release was "sufficient" "to achieve the goals of sentencing" and, thus, justified the District Court's downward variance. Newkirk Br. 2. Newkirk's pretrial conditions spanned 16 months of home confinement; 17 months of less-restrictive home detention; and 32 months of even less-restrictive curfew. Those conditions are hardly the equivalent of time in prison. And, in any case, Newkirk cannot rely on this argument to justify the District Court's sentence because he did not make it below, and the Court did not rely on it as a basis for its variance. *Jackson*, 862 F.3d at 394 ("A sentence must . . . be reversed if 'no reasonable sentencing court would have imposed the same sentence on that particular defendant *for the reasons the district court provided.*'" (emphasis added) (quoting *Tomko*, 562 F.3d at 568)).

Newkirk's period of pretrial release cannot reduce his recommended sentence for another reason. The Guidelines preclude the use of home detention or confinement as an alternative to imprisonment where, as here, the recommended sentence is "15 months or more." U.S.S.G. § 5C1.1 cmt. n.8; *see* U.S.S.G. § 5C1.1(f); U.S.S.G. ch.5, pt. A; *cf. Reno v. Koray*, 515 U.S. 50, 52 (1995) (concluding that the time a defendant spent on bail before trial "was not 'official detention' within the meaning of 18 U.S.C. § 3585(b)" and could not be "credit[ed] against his sentence of imprisonment"). To be sure, a sentencing court can consider pretrial detention if it decides to vary from the Guidelines. *United States v. Romualdi*, 101 F.3d 971, 977 (3d Cir. 1996). But given that pretrial release is "not as harsh as

imprisonment," "a day-to-day offset against time to be served in prison" "would be too lenient to represent the punishment that Congress intended." *United States v. Martin*, 363 F.3d 25, 39–40 (1st Cir. 2004); *see United States v. Little*, 123 F.4th 1360, 1371 (D.C. Cir. 2024) (discussing "ample precedent" that "supports not applying a 1:1 ratio when crediting probation time"). So even if a sentencing court were inclined to grant Newkirk a downward variance because of the combined 34 months he spent in home confinement and detention, in no scenario does that time, standing alone, warrant a 91.5-month reduction.

Because no reasonable court—after considering the "nature and circumstances" of Newkirk's offense and the need for his sentence to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment" "afford adequate deterrence" and "avoid unwarranted sentence disparities," 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(6)—would impose a sentence of about two weeks' imprisonment, Newkirk's sentence was substantively unreasonable.

\*     \*     \*

Since the Supreme Court made the United States Sentencing Guidelines advisory in its landmark decision in *United States v. Booker*, 543 U.S. 220 (2005), this Court has given district courts a wide berth to impose just and fair sentences. *See Tomko*, 562 F.3d at 574–75. Those valid sentences may include variances from the Guidelines. *See, e.g.*, *United States v. Zabielski*, 711 F.3d 381, 385, 392 (3d Cir. 2013) (approving downward variance of 13 months); *United States v. Johnson*, 677 F.3d 138, 144 (3d Cir. 2012) (approving upward variance of 14 months). But the greater the variance,

20

the stronger the explanation must be. *See, e.g.*, *Kononchuk*, 485 F.3d at 204; *Merced*, 603 F.3d at 216; *Gall*, 552 U.S. at 50. Here, the District Court's decision to impose a sentence just shy of 14 days when the Guidelines advised 92 to 115 months cannot be justified on this record. So we will vacate Newkirk's judgment of sentence and remand for the District Court to hold a new sentencing hearing where it should give serious consideration to a substantially longer sentence.

Mark E. Coyne
John F. Romano **[Argued]**
Office of the United States Attorney
District of New Jersey

*Counsel for Appellant*

Ruth M. Liebesman **[Argued]**
Ruth M. Liebesman, Atty-at-Law

*Counsel for Appellee*